NELLIE L. WHITNEY, APPELLEE, V. GEORGE D. WHITNEY, APPELLANT.

FILED JANUARY 17, 1907. No. 14,503.

1. **Judgment:** RES JUDICATA. In an action for a divorce by a wife on the grounds of extreme cruelty and failure to support, the court will not consider evidence of the husband's alleged cruelty and failure to support prior to a judgment of dismissal in a former suit between the same parties based on the same grounds, when there was a trial on the merits and no appeal taken.

2. **Divorce:** EVIDENCE. Evidence examined, and *held* insufficient to sustain the allegations of extreme cruelty and failure to support.

APPEAL from the district court for Holt county: JAMES J. HARRINGTON, JUDGE. *Reversed and dismissed.*

*George W. Wiltse* and *R. R. Dickson,* for appellant.

*M. F. Harrington* and *A. F. Mullen, contra.*

EPPERSON, C.

The plaintiff, Nellie L. Whitney, and the defendant, George D. Whitney, were married in Cedar county, this state, in 1886. They lived together happily until 1904, when Mrs. Whitney brought an action for divorce in the district court for Cedar county, alleging cruelty and failure to support. On November 15, 1904, a trial was had

on the merits, which resulted in a judgment for defendant. No appeal was taken, and the judgment dismissing plaintiff's action is in full force and effect. Shortly after the trial Mr. and Mrs. Whitney returned to their home and lived together until December 29, 1904, at which time the husband insisted that they occupy a common bed, and for this reason Mrs. Whitney left and has not since lived with defendant. Soon thereafter she went to Holt county, and consulted an attorney who advised her to move into that county. She arrived in Holt county January 17, 1905, and rented a house for three months, stating to the landlord that perhaps she would not want it longer than that time. Four days thereafter she brought this action in the district court for that county, again asking a divorce on the ground of defendant's extreme cruelty and failure to support, and was granted a decree, from which defendant appeals.

We entertain serious doubts concerning the good faith of plaintiff's residence in Holt county. It is clear that the sole purpose of her residence there was to institute divorce proceedings, and we are urged to condemn such conduct and reverse the decree for this reason. It does, indeed, seem to be taxing the courts to thus shift one's residence so soon after being denied relief in another jurisdiction, and applying again for a divorce on the same grounds. Were we required to determine the question of residence, we doubt very much whether we could sustain the jurisdiction of the court. However, a judicial pronouncement as to this question is unnecessary as the decision may be placed on other grounds. We therefore pass over this—defendant's first contention—and take up his insistence that the decree granting plaintiff a divorce is not sustained by the evidence. The discussion here proceeds under two heads:

1. Was it shown by a preponderance of the evidence that defendant had been guilty of extreme cruelty? The district court considered immaterial all evidence as to the conduct of the parties prior to November 15, 1904, the

date of the former decree, and based its judgment upon acts occurring subsequently thereto. Hence, the inquiry is: Has defendant been guilty of cruelty since November 15, 1904? Plaintiff testified, among other things, that her husband charged her with unchastity; that he called her a "damned fool," and told her that she was "crazy"; and that he offered their 13-year-old son money to watch her to see what fellows she met when she went up town. Plaintiff, in her zeal to secure a divorce, testified to other acts of cruelty unnecessary to describe in this opinion, but it is significant that she did not mention this alleged conduct on the first trial in Cedar county, and did not sustain a shock to her sensibilities or suffer injury to her health by its effect upon her feelings. In view of all the circumstances disclosed in the record, we do not feel justified in giving plaintiff's testimony the credence which otherwise we would be inclined to do. This court has adopted a liberal rule in divorce cases, and has construed the term "extreme cruelty" to mean "any unjustifiable conduct on the part of either the husband or the wife, which so grievously wounds the mental feelings of the other, or so utterly destroys the peace of mind of the other, as to seriously impair the bodily health and endanger the life of the other, or such as utterly destroys the legitimate ends and objects of matrimony." *Ellison v. Ellison,* 65 Neb. 412, and cases there cited. But we are of opinion that the rule announced in *Ellison v. Ellison* cannot be extended to the case at bar. The evidence before us utterly fails to show that defendant's conduct subsequently to November 15, 1904, so grievously wounded his wife's mental feelings, or so utterly destroyed her peace of mind, as to seriously impair her bodily health and endanger her life. Counsel do not point out, and upon examination of the record we are unable to find, evidence tending to show what effect defendant's alleged conduct subsequently to November 15, 1904, had upon plaintiff's mental feelings or her health. We therefore cannot say that plaintiff proved by a preponderance of

the evidence that defendant was guilty of extreme cruelty as defined by this court.

2. The most .serious difference between these parties, and the real trouble in this home, is the controversy over family expenses. We find that the testimony on this subject has taken a wide range, and refers principally to alleged misconduct prior to the unappealed from decree of the district court for Cedar county denying plaintiff a divorce on the identical grounds here urged. We therefore do not place our decision upon evidence relating to transactions prior to November 15, 1904. What provision has defendant made for his family since that date? He possesses property (mostly farm land) worth $15,000 above incumbrances. His income is perhaps $700 or $800 a year. As required by the decree in the former divorce suit, he paid plaintiff $30 a month alimony until December 1, 1904. It therefore cannot be said that defendant failed to support his wife from November 15 to December 1, 1904. Defendant testified that he expended $75.20 for provisions from December 1 until his wife left him December 29. Mrs. Whitney testified: "When I went out to my daughter's to spend Christmas, he went and put in the biggest supply I ever knew to be in the house. *  *  * I wasn't there long enough to go through it all, I seen that there was a lot of things there that wasn't there when I went away. *  *  * There was more than I was used to, it shocked me with surprise." Counsel argue that defendant refused to pay plaintiff's bills, but the evidence discloses that the bills were contracted while defendant was paying plaintiff $30 a month alimony under decree of court. Dr. Kerley, a disinterested witness, was asked whether the Whitneys were as well situated as the average people in the village as to house, clothing and surroundings, and answered: "Well, as to that class of people, I should say, 'yes.'" We are convinced from a review of the evidence that plaintiff did not successfully carry the burden of proving that defendant subsequently to the former decree had "grossly or wantonly and cruelly

refused or neglected" to support her, within the meaning of section 5329, Ann. St. A few concessions by each party to this litigation would make possible the restoration of their home and the continuation of the marital relation as it existed for 18 years prior to their recent trouble.

We recommend that the judgment of the district court be reversed and plaintiff's action dismissed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and plaintiff's action dismissed.

REVERSED AND DISMISSED.