MARIE A. YOUNGS

v.

PHINEAS B. YOUNGS.

*Filed at Ottawa November 26, 1889.*

1. DIVORCE —"*habitual drunkenness,*" *as a ground of divorce—in what drunkenness may consist—of the morphine habit—the statute construed.* The word "drunkenness," as used in the statute as a ground of divorce, means that state or condition which inevitably follows from the taking into the body of excessive quantities of alcoholic or other intoxicating liquors. It is used in the statute in its ordinary and popular sense, and does not mean that similar state or condition produced by the use of morphine by hypodermic injection into the arms or legs. It can not be held to include that intoxication produced by the hypodermic administration of morphine.

2. To make the excessive indulgence in the morphine habit a ground for divorce will require further legislative action, as it is not made such by the present statute. It is beyond the power of courts to extend the statutory grounds of divorce to cases not within the legislative intent.

3. SAME—*cruelty—in what it may consist.* If the acts of violence relied upon as cruelty in a suit by a wife for divorce, are provoked by her attempting to take from her husband morphine he was using, and while he was in a state of total or partial delirium, and his acts were mainly of resistance to such attempt, she can not set up the treatment received by her, under such circumstances, as extreme and repeated cruelty, within the meaning of the statute.

4. SAME—*condonation of acts of cruelty.* Where a wife continues to live and cohabit with her husband several months after the last act of personal violence by him, and nothing is shown to do away with her condonation, this will be a bar to a bill for divorce upon the ground of cruelty, filed by her afterward.

5. SAME—*sufficiency of bill—as to the charge of cruelty.* A bill for divorce charging cruelty only in general terms, without stating any specific acts, is subject to demurrer.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. LORIN C. COLLINS, Judge, presiding.

Mr. C. F. LOESCH, and Mr. GEORGE DRIGGS, for the appellant:

Is the excessive use, for over two years, of any narcotic substance which intoxicates its victim, sufficient ground for a divorce under the statute permitting divorce for habitual drunkenness for the space of two years? Bishop on Marriage and Divorce, (6th ed.) 813; *Barber* v. *Barber*, 14 L. R. 375.

Those acts which affect the life, health, or even the comfort, of the party aggrieved, and give a reasonable apprehension of bodily hurt, are called cruelty. 1 Bouvier, 414.

As to what constitutes extreme and repeated cruelty, see *Sharp* v. *Sharp*, 116 Ill. 511; *Coursey* v. *Coursey*, 60 id. 186.

The patient forbearance of a wife should not be mistaken for condonation. *Mack* v. *Hardy*, (La.) 2 So. 181.

As to condonation, see 1 Bouvier, 315; *Sharp* v. *Sharp*, 116 Ill. 517; *Jacobs* v. *Tobelman*, 36 La. Ann. 842; *Beeby* v. *Beeby*, 1 Hagg. 789.

Mr. A. J. HOPKINS, Mr. N. J. ALDRICH, and Mr. F. H. THATCHER, for the appellee:

The immoderate use of opium, though it may operate the same as that of alcoholic liquors, is not intemperance, within the meaning of a statute of this kind, and it is the same with chloroform. 1 Bishop on Marriage and Divorce, (6th ed.) sec. 813; *Barber* v. *Barber*, 14 L. R. 375; Bishop on Stat. Crimes, 972.

Divorce can only be granted for causes specified in the statute—anything short of that requirement will not be sufficient. The General Assembly seems to have restricted, rather than encouraged, the grounds for divorce. *Henderson* v. *Henderson*, 88 Ill. 248.

As to what is the extreme and repeated cruelty required by the statute, see *Henderson* v. *Henderson*, 88 Ill. 250; *Vignos* v. *Vignos*, 15 id. 186; *Shorediche* v. *Shorediche*, 115 id. 102; 2 Kent's Com. *126.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a bill in chancery, brought by Marie A. Youngs against Phineas B. Youngs, her husband, in the Circuit Court of Cook county, praying for a divorce. The parties were married at Galva, Illinois, February 12, 1879, and shortly thereafter took up their residence at Aurora, Kane county, Illinois, where they resided until about the first of March, 1887. One child, a daughter, was born as the fruit of their marriage, who, at the date last mentioned, was about five years of age. On or shortly after March 1, 1887, the complainant left her husband and went to the city of Chicago where her father and sister were living. On the 4th day of March, 1887, she filed a bill against her husband for a divorce in the Circuit Court of Cook county, setting up as her only ground of complaint, that her husband, for more than two years then last past, had been guilty of habitual drunkenness. On the 11th of April, 1887, the parties executed an instrument in writing, whereby it was agreed that they should live separate and apart for the period of one year from that date, and that during that period the defendant should pay the complainant at the rate of $35 per month for the support and maintenance of herself and child, and that the defendant should have the privilege of seeing said child by himself or in the presence of the complainant as he might prefer, one day each month, during the continuance of said contract; that the complainant should immediately dismiss her bill for a divorce and refrain from commencing any other proceedings of like character during the same period; that the defendant, during that time, would wholly refrain from the use of morphine or liquor in any form, except for medical purposes and under the direction of a skillful and reputable physician.

For the period of one year mentioned in said instrument the parties lived separate and apart, the defendant living in Aurora and the complainant remaining in Chicago, the defend-

ant during that time making to the complainant the monthly payments agreed upon. At the end of the year the defendant ceased to make further payments, and the complainant, on the 12th day of April, 1888, the day following the termination of the year, filed in the same court a new bill for a divorce.

By said bill, the complainant alleged, as she had in her former bill, that the defendant, for the period of more than two years prior to the time she left him as aforesaid, was guilty of habitual drunkenness, and also alleged generally that the defendant had been guilty of extreme and repeated cruelty towards the complainant, that is, that he had, on divers days and times since said marriage, beaten and abused her, and neglected to furnish her and her child proper and necessary food and clothing, and was harsh, unkind and tyrannical in his treatment of the complainant, but no specific acts of cruelty were set out or charged in said bill. The defendant demurred to that portion of the bill charging cruelty, and answered the residue, denying said charge of drunkenness. On the 25th day of June, 1888, the complainant filed her petition for alimony *pendente lite* and for an allowance for her solicitor's fees, which petition was denied, and thereupon, on the 9th day of July, 1888, she amended her bill by inserting therein a number of specific charges of cruelty. The defendant answered denying said charges, and the cause afterwards coming on to be heard by the court on pleadings and proofs, a jury being waived, the issues were found for the defendant and a decree was entered upon said finding dismissing the bill for want of equity. Said decree was affirmed by the Appellate Court, and by appeal from the judgment of that court, the complainant has brought the record here and assigned errors.

The evidence fails to show that the defendant has ever been in the habit of drinking intoxicating liquors, at least to excess. But it is claimed, and the evidence on behalf of the complainant tends to show, that, for several years prior to the time the complainant left him, the defendant had been in the habit

of using morphine administered by hypodermic injections in the arm and leg. It appears that the effects of morphine thus administered are very similar, and in many respects apparently identical, with those produced by the excessive use of intoxicating liquors. This branch of the complainant's case therefore must rest upon the proof of the defendant's indulgence in the morphine habit, and must necessarily fail, unless it can be held that the intoxication and stupor produced by the excessive use of morphine is "drunkenness" within the meaning of the first section of the statute in relation to "Divorce."

It can not be doubted, we think, that the word "drunkenness" is used in said statute in its ordinary and popular sense. The primary signification of the word, as given by Webster, is: "The state of being drunken, or overpowered by alcoholic liquor; intoxication; inebriety." In Bouvier's Law Dictionary it is defined as, "The condition of a man whose mind is affected by the immediate use of intoxicating drinks." A similar definition is given by Rapalje and Lawrence in their Law Dictionary, viz.: "Disorder of the mind occasioned by the recent use of intoxicating liquor." The Supreme Judicial Court of Massachusetts, in defining the meaning of the word as used in the statutes of that State, say: "There can be no doubt that drunkenness, as it is commonly understood in the community, is the result of the excessive drinking of intoxicating liquors. Such is also the signification given to it by lexicographers. It is ebriety, inebriation, intoxication; all words nearly synonymous, and all expressive of that state or condition which inevitably follows from taking into the body by swallowing, or drinking, excessive quantities of such liquors." It was held in that case that evidence of habitual intoxication from the use of chloroform would not sustain a complaint under the Massachusetts statute, charging a person with being a common drunkard. *Commonwealth* v. *Whitney,* 11 Cush. 477.

That the word is used in our statute in the sense above indicated, and that it can not be held to include intoxication pro-

duced by the hypodermic administration of morphine, seems to be the inevitable conclusion. A further confirmation of this view, if such were necessary, may be derived from the fact that habitual drunkenness for two years was made a ground for divorce by our statute as early as the year 1827, which was many years before the mode of administering morphine by hypodermic injection was known, as we suppose, to even the Medical Faculty. As originally used therefore these words could not have been intended to include intoxication produced by the administration of morphine in this mode, and as the same words have been continued in precisely the same connection in every subsequent revision of our statutes, the conclusion is irresistible that the words are to be understood now in the same sense in which they were originally employed. It is beyond the power of the courts to extend the application of said words to a subject not within the legislative intent. To make an excessive indulgence in the morphine habit a ground for divorce will require further legislative action, as it is clearly not made such by the statute as it now stands.

The complainant's charges of extreme and repeated cruelty remain to be considered. The evidence tending to support those charges is to be found in the testimony of the complainant, corroborated in part by the testimony of her sister and of a domestic in the family. In the defendant's testimony said acts of cruelty are specifically denied. If it be admitted that the preponderance of the evidence is with the complainant, it remains to be seen whether, upon her own showing, she has suffered at the hands of the defendant such extreme and repeated cruelty, within the meaning of the statute, as should entitle her to a divorce.

The testimony of the complainant and her witnesses shows the commission by the defendant of several acts of personal violence to the complainant which, if unexplained, would, as must probably be conceded, make out a case of cruelty sufficient to entitle the complainant to a decree. But it affirma-

tively appears that all of said acts of violence were committed while the defendant was under the influence of morphine, and that they were generally brought on by the complainant's attempts to interpose and prevent the defendant's administering to himself that drug. However praiseworthy may have been her efforts to take the morphine out of her husband's possession, or to prevent his using it, she must be deemed to have known and contemplated the natural and probable results of her action, and to have thus voluntarily encountered the violence which ensued. We would not be understood as holding that the intoxication or delirium produced by the voluntary use of morphine can be set up as a justification of tortious acts committed by one under the influence of that drug, any more than can intoxication produced by the use of alcoholic liquors. But if the violence complained of was provoked by the complainant's attempts to take the morphine from her husband while he was in a state of total or partial delirium, and if, as the evidence seems to show, his acts consisted mainly of resistance on his part to such attempts, the complainant can not set up the treatment received by her under such circumstances as extreme and repeated cruelty within the meaning of the statute.

The evidence tends to show, and is, as we think, sufficient to establish, condonation. The last act of personal violence to the complainant proved took place some time in December, 1886, but the evidence shows that the complainant continued to live and cohabit with the defendant until she left him about the first of the following March. No subsequent conduct on the part of the defendant is shown which can be held to be sufficient to do away with such condonation, and we think the chancellor was correct in holding it to be a bar to the complainant's right to relief.

As tending to support her charge of cruelty, the complainant gave some evidence to the effect that while she lived and cohabited with the defendant, she was compelled by him to

submit to excessive sexual intercourse. We have duly considered the evidence on that point, and have only to say that, in our opinion, it fails to show such state of facts as would amount in law to cruelty.

The conclusion reached by the chancellor that the complainant is not entitled to relief on the ground of cruelty is very considerably fortified by considerations drawn from the mode in which her complaint in that behalf has been brought forward. She left her husband and went to Chicago about March 1, 1887, and on the 4th day of that month she filed her bill against him for a divorce. At that time the cruelty which she claims to have suffered must have been fresh in her recollection, and it was but reasonable to expect that, if she was entitled to a divorce on that ground, she would allege it in her bill. The only ground alleged, however, was habitual drunkenness, no mention whatever of any acts of cruelty being made. In the articles of agreement entered into a few days later, by which they arranged to live separate and apart for a year, it was recited that certain differences had arisen between them, but the only matter of difference in any way hinted at in the instrument related to the use by the defendant of morphine and liquor. At the expiration of the year the complainant filed a new bill for divorce, alleging habitual drunkenness as before, but charging cruelty only in general terms, and not in such form as to be available as a ground for relief. It was not until the sufficiency of that portion of her bill had been challenged by demurrer, and after the weakness of her bill had been developed on her motion for an allowance of alimony *pendente lite*, that her bill was so amended as to charge cruelty in such form as to constitute a ground for a divorce. These circumstances furnish ground for a legitimate inference that the charge of cruelty is a mere afterthought, and that it was brought forward only after it had become apparent that the bill could not otherwise be maintained.

We are of the opinion that the decree is in accordance with the evidence, and that no error was committed by the Appellate Court in affirming it. The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*