I. H. HAYES, *Appellant,* v. A. E. HAYES, *Appellee.*

Opinion Filed November 3, 1923.

1. Habitual intemperance as ground for divorce in this State is limited to the excessive use of alcoholic liquors and has no reference to the excessive use of drugs.

2. The drug habit is not a ground for divorce in this State.

3. Divorce on the ground of extreme cruelty will be denied when there is no actual bodily violence, unless the treatment complained of be such as damages health or renders cohabitation intolerable and unsafe, or unless there are threats of mistreatment of such kind as to cause reasonable and abiding apprehension of bodily violence, so as to render it impracticable to discharge marital duties.

4. A single act of violence is not nor are isolated instances of cruelty repeated at long intervals sufficient grounds for divorce.

5. A divorce is not authorized for every slight violence which an angered husband may commit against his wife and much less will slight acts of violence by a wife from which the husband can easily protect himself constitute cruelty entitling him to divorce.

This case was decided by Division B.

An Appeal from the Circuit Court for Marion County; W. S. Bullock, Judge.

Affirmed.

*S. T. Sistrunk,* for Appellant;

*T. S. Trantham,* for Appellee.

TERRELL, J.—Appellant, I. H. Hayes, who was complainant below, filed his amended bill praying a dissolution of the marriage bond existing between himself and defendant, Abbie E. Hayes. The grounds for the prayer being extreme cruelty and "habitual intemperance in that she habitually and continuously indulged in the use of narcotic drugs to excess, and indulged in such habit until she became a victim thereof, and until the effect of the excessive use of such drugs rendered the defendant unable and unfit to perform the duties and obligations of a wife, and rendered the continuance of the marital relation between them intolerable and impractical."

The defendant having been committed to the Hospital for the Insane at Chattahoochee at the time the bill of complaint was filed, the court appointed Hon. T. S. Trantham, a practicing attorney of Ocala, Florida, as guardian *ad litem* to appear and represent her and do all things necessary and proper for her defense in this action.

Mr. Trantham as guardian *ad litem* filed his answer requiring good and sufficient proof of all the material allegations in the bill and incorporated therein a demurrer to that part alleging "habitual intemperance."

The Chancellor sustained the demurrer, and on final hearing dismissed the bill of complaint. Appeal is taken from both orders.

"Habitual intemperance of defendant" is a ground for divorce in this State, and the effect of the demurrer sustained below raises the question of whether or not "habitual intemperance" should be extended to cover the immoderate use of drugs or under the terms of our statute, is the drug habit a ground for divorce.

Our statute making habitual intemperance a ground for divorce seems to have been enacted in 1835, when the intemperate use of alcoholic beverages was frequent, while the drug habit was comparatively infrequent. Black's Law Dictionary defines habitual intemperance as that degree of intemperance from the use of intoxicating drinks which disqualifies the person a great portion of the time from properly attending to business, or which would reasonably inflict a course of great mental anguish upon an innocent party. Mowry v. Home Life Ins. Co., 9 R. I. 346, text 355; Zeigler v. Commonwealth, (Pa.) 14 Atl. Rep. 237, text 238; Tatum v. State, 63 Ala. 147, text 149; Elkin v. Buschner, (Pa.) 16 Atl. Rep. 102, text 104.

Webster's International Dictionary, and the Century Dictionary define intemperance as the excessive indulgence in intoxicating liquors, while Bouvier's Law Dictionary and Words and Phrases present numerous definitions from courts of last resort in line with the foregoing from Black's Law Dictionary.

"Habitual intemperance," as a ground for separation means the custom or habit of getting drunk; ordinary beer drinking, short of intoxication, furnishes no ground for such a charge. Schaub v. Schaub, 117 La. 727, 42 South. Rep. 249.

Habitual drunkenness or intemperance as a statutory ground for divorce means an irresistible habit of getting drunk, a fixed habit of drinking to excess, such frequent indulgence to excess as to show a formed habit and in-

ability to control the appetite. Garrett v. Garrett, 252 Ill. 318, 96 N. E. Rep. 882; Lentz v. Lentz, 171 Mich. 509, 137 N. W. Rep. 229; Page v. Page, 43 Wash. 293, 86 Pac. Rep. 582; O'Kane v. O'Kane, 103 Ark. 382, 147 S. W. Rep. 73; Tarrant v. Tarrant, 156 Mo. App. 725, 137 S. W. Rep. 56; Donley v. Donley, 150 Mo. App. 660, 131 S. W. Rep. 356.

The case of Ring v. Ring, reported in 112 Ga. 854, 38 S. E. Rep. 330, contains an illuminating discussion on the proposition that "habitual drunkenness" as ground for divorce means drunkenness produced by the excessive use of alcoholic liquors, and has no reference to the excessive use of drugs. This view is supported by the following: McGill v. McGill, 19 Fla. 341; State v. Kelley, 47 Vt. 294; Commonwealth v. Whitney, 11 Cush. (Mass.) 477; Burt v. Burt, 168 Mass. 204, 46 N. E. Rep. 622; Dawson v. Dawson, 23 Mo. App. 169; Youngs v. Youngs, 130 Ill. 230, 22 N. E. Rep. 806; Smith v. Smith, 30 Del. (7 Boyce) 283, 105 Atl. Rep. 833; Rindlaub v. Rindlaub, 19 N. D. 352, 125 N. W. Rep. 479, and Schouler on Marriage, Divorce and Separation and Domestic Relations, Vol. 2, page 1787 (Sixth Edition.)

The text-books all make a distinction between and discuss under different heads the immoderate use of drugs and habitual intemperance, and many states with old statutes like ours have in recent years enacted laws enlarging the meaning of "habitual intemperance" or "habitual drunkenness," and such like terms to cover the intemperate use of drugs, but such statutes have not been passed in our State, so we must conclude that the legislature used the term "habitual intemperance" in its plain, ordinary and usual sense, viz, the intemperate use of alcoholic beverages, and has no application to the drug

habit. Defendant's demurrer to this part of the bill was therefore properly sustained.

The demurrer having been sustained, the only question left for consideration at final hearing was that of "extreme cruelty," and the defendant having been committed to the hospital for the insane, can this charge be properly or legally sustained?

Counsel for complainant argues that the acts constituting extreme cruelty on the part of defendant to complainant were committed while defendant was sane, and that her insanity cannot now be interposed as a defense in this suit. It seems to be a well established rule in many states that proceedings for divorce may be instituted against an insane spouse for any ground of divorce accruing while such spouse was sane and that the subsequent insanity of such spouse is not under modern law regarded as a bar to such proceedings. 9 R. C. L. p. 375; Harrigan v. Harrigan, 135 Cal. 397, 67 Pac. Rep. 506; Newcomb v. Newcomb, 13 Bush (Ky.) 544; Garnett v. Garnett, 114 Mass. 379; Matchin v. Matchin, 6 Pa. St. 332; Fisher v. Fisher, 54 W. Va. 146, 46 S. E. Rep. 118; Long on Domestic Relations, Par. 138 Note; Bishop on Marriage, Divorce and Separation; Schouler on Marriage, Divorce, Separation and Domestic Relations, 1880; Huston v. Huston's Committee, 150 Ky. 353, 150 S. W. Rep. 386; Pile v. Pile, 94 Ky. 308, 22 S. W. Rep. 215; Lewis v. Lewis, 60 Okla. 60, 158 Pac. Rep. 368; Steed v. Steed, 54 Utah 244, 181 Pac. Rep. 445.

The bill of complaint in this cause was filed July 20, 1921. The evidence shows that complainant and defendant were married in 1904, and lived together as man and wife until March 17, 1920, when defendant was adjudged insane. Complainant testifies that about two or three years after their marriage he first discovered that defend-

ant was using opiates; that he treated her the best his means and station in life afforded; that he first thought defendant was using opiates to relieve pain; that he placed her under the treatment of Dr. Wallace, a specialist, at Dade City in 1913, and that while under the influence of drugs defendant was fractious and quarrelsome.

Complainant further testifies that in 1917 and 1918 defendant presented a gun at him and threatened to kill him; that on another occasion she struck at him with a knife, and that on still another occasion she attempted to take his life with a stick of wood; that at each of said times she exhibited a violent and ungovernable temper, and at one time addressed complainant as a son of a bitch.

The evidence also shows that defendant was cured of the drug habit in 1915, that she showed no signs of insanity till a short time prior to March, 1920, and Dr. Clark testified that he was the family physician of complainant for some time prior to March, 1920, and that during that time when defendant was full of dope all went well, but that when she was out of it she "raised the devil." There is no testimony supporting the allegation of extreme cruelty except that of complainant and the foregoing statement from Dr. Clark, and Dr. Clark did not testify that defendant "raised the devil" with complainant. It will also be observed that the acts of extreme cruelty charged by complainant to defendant were distributed over extended periods and complainant continued to live with defendant as his wife till she was committed to the hospital for the insane.

Now in the light of the foregoing, how stands the proof? It must be realized that in the nature of things plaintiff's case in so far as it is grounded on extreme cruelty rests largely on his own testimony as acts of cruelty inflicted by one spouse on another are usually inflicted in the

privacy of the home circle. Our statute permits the dissolution of the marriage contract only in cases where the purpose of the relation has failed or been defeated by grave and serious misconduct, and on application for divorce such misconduct should be established by competent evidence of a full and satisfactory nature. Another writer expresses this same general principle as follows: "Public policy, good morals and the interests of society require that the marriage relation should be surrounded with every safeguard and its severance allowed only in the manner prescribed, and for the causes specified by law.

"Divorce on the ground of extreme cruelty will be denied, when there is no actual bodily violence unless the treatment complained of be such as damages health or renders cohabitation intolerable and unsafe, or unless there are threats of mistreatment of such kind as to cause reasonable and abiding apprehension of bodily violence, so as to render it impracticable to discharge marital duties." Palmer v. Palmer, 26 Fla. 215, 7 South. Rep. 864; Beekman v. Beekman, 53 Fla. 858, 43 South. Rep. 923; Hancock v. Hancock, 55 Fla. 680, 45 South. Rep. 1020; Wetherington v. Wetherington, 57 Fla. 551, 49 South. Rep. 549; Prall v. Prall, 58 Fla. 496, 50 South. Rep. 867; Rowe v. Rowe, 84 Kan. 696, 115 Pac. Rep. 553; Close v. Close, 25 N. J. Eq. 526; Whitney v. Whitney, 78 Neb. 240, 110 N. W. Rep. 555; 9 R. C. L. Par. 115, and cases cited; Schouler on Marriage, Divorce, Separation and Domestic Relations (6th ed.) Vol. 2, p. 1798.

"It is a general rule that a single act of violence is not cruelty sufficient as cause for divorce, nor are isolated instances of cruelty repeated at long intervals. That no reasonable apprehension of danger was entertained or existed at all may well be inferred when such single act is set up years after it was performed, or disconnected acts

stretching over a long interval of uninterrupted marriage intercouse are made the ground of later proceedings for divorce by a dissatisfied spouse.'' Schouler on Marriage, Divorce, Separation and Domestic Relations.

A divorce is not authorized for every slight violence which an angered husband may commit against his wife, and much less will slight acts of violence by a wife from which the husband can easily protect himself constitute cruelty entitling him to divorce. Huff v. Huff, 73 W. Va. 330, 80 S. E. Rep. 846, 51 L. R. A. (N. S.) 282; 9 R. C. L. Par. 115, p. 336.

In the light of the law and the rule as thus established, we do not think the plaintiff has made out a case entitling him to the relief prayed for. The acts of extreme cruelty charged by complainant against the defendant, his wife, appear to have been committed while she was sane, but from all the evidence they were no doubt precipitated by or were the remote result of the drug habit. It does not appear that complainant suffered any loss of health, personal injury or menace to life or limb as a result of such acts of violence on the part of his wife. It further appears that the acts of cruelty charged against defendant were isolated instances repeated at distant intervals from which complainant could and did easily protect himself; that he did from a very commendable motive continue to live with defendant long after the commission of the acts charged against her and was in fact living with her as his wife at the time she was committed to the hospital for the insane. It could not therefore be said that the conduct of defendant to plaintiff made cohabitation intolerable or unsafe, or that plaintiff now has an abiding apprehension of bodily violence so as to render it impracticable to discharge marital duties.

The judgment of the Circuit Court of Marion County was proper, and is affirmed.

WHITFIELD, P. J., AND WEST, J., concur.

TAYLOR, C. J., AND ELLIS AND BROWNE, J. J., concur in the opinion.