R. S. WINDHAM v. HELEN WINDHAM

198 So. 202
Division B
Opinion Filed October 11, 1940
Rehearing Denied November 8, 1940

*W. D. Bell,* for Appellant;
*Mabry, Reaves, Carlton & White,* for Appellee.

564

*W. D. Bell,* for Appellant;

*Mabry, Reeves, Carlton & White,* for Appellee.

CHAPMAN, J.—From a final decree of divorce and an adjudication of the property rights of the respective parties to this suit as made and entered by the Circuit Court of Charlotte County, Florida, an appeal has been perfected to this Court. The bill of complaint filed in the lower court by the appellee here charged the defendant husband therein with (a) extreme cruelty; and (b) the habitual indulgence in a violent and ungovernable temper, and for these reasons she was forced to separate from and leave the defendant. Several occasions or incidents are set forth in the bill of complaint which it is contended are sufficient to constitute or make out each of these charges under subsections 4 and 5 of Section 4983 C. G. L., and decisions of this Court. The prayer is for a divorce *a vinculo matrimonii.*

The defendant below failed or omitted to challenge by

motion to dismiss the bill of complaint because of the insufficiency of facts appearing therein to constitute a valid cause of action in equity or to make such a motion and incorporate the same in the answer as provided by subsection 1 of Section 33 of Chapter 14658, Acts of 1931, commonly referred to as the Florida Chancery Act. The answer denied the several material allegations of the bill of complaint and averred that during the period of cohabitation he has been faithful, kind and affectionate and provided his wife with all her wants and necessities commensurate with his financial ability and position and station in life.

The defendant in the same answer sought affirmative relief of the plaintiff and alleged therefor that he was the owner in fee simple of lands therein described, having paid for the same with his own funds and caused the title thereto to be placed in the plaintiff for their mutual protection and that she should hold all of said lands as trustee for the said defendant. The defendant prayed that the court on final hearing decree the title to the said lands described be held by the plaintiff in trust for the defendant and that he be declared the fee simple owner. The answer of the plaintiff to the defendant's counter claim denied that the defendant was the fee simple owner of said real estate, nor did he contribute funds in whole or in part for the purchase thereof, and denied that she held the property as trustee for her said husband.

The evidence shows that the parties married in Polk County, Florida, during the year 1904 and moved to then DeSoto (now Charlotte) County. The husband owned around 12 acres of land situated some few miles from Punta Gorda and some few acres had been cleared and fruit trees set and a small boxed house had been erected thereon when the parties set up housekeeping on the place. The defendant owned around 17 head of stock cattle and these were

driven from Polk County to their new home near Punta Gorda.

The parties lived together from 1904 until June, 1938. The wife testified that the treatment of the husband had ruined her health and she could not live with him under the mental strain and it now was necessary to withdraw cohabitation. She went to a hospital and was under the treatment of Dr. Blake and some time was spent in the mountains of North Carolina in an effort to regain her health. The parties were in their middle sixties but the record fails to disclose whether or not children were born to the union.

Counsel for appellant contends that the evidence adduced on the part of the plaintiff below was insufficient as a matter of law to sustain the decree of divorce. The rule cited as applicable to the facts adduced is that a divorce on the ground of cruelty will be denied where there is no actual bodily violence unless the treatment complained of be such as damages health or renders cohabitation intolerable and unsafe, or unless there are threats of mistreatment of such kind as to cause reasonable and abiding apprehension of bodily violence so as to render it impracticable to discharge marital duties. The following cases are cited: Chishold v. Chisholm, 98 Fla. 1196, 125 So. 694; Palmer v. Palmer, 26 Fla. 215, 7 So. 864; Beekman v. Beekman, 53 Fla. 858, 43 So. 923; Trigo v. Trigo, 90 Fla. 60, 105 So. 123; Hancock, 55 Fla. 680, 45 So. 1020, 15 L. R. A. (N. S.) 670; Hayes v. Hayes, 86 Fla. 350, 98 So. 66; Baker v. Baker, 94 Fla. 1001, 114 So. 661; Kellogg v. Kellogg, 93 Fla. 261, 111 So. 637; Van v. Van, 100 Fla. 612, 129 So. 886; Prall v. Prall, 58 Fla. 496, 50 So. 867, 26 L. R. A. (N. S.) 577; Dean v. Dean, 87 Fla. 242, 99 So. 816; Donald v. Donald, 21 Fla. 571; Hickson v. Hickson, 54 Fla. 556, 45 So. 474; Phelan v. Phelan, 12 Fla. 449; Fuller v. Fuller, 23 Fla. 236, 2 So. 426. We are in full accord with the principles of law

enumerated in each of the cases cited by counsel for appellant.

The wife testified to certain happenings or incidents as having occurred from 1904 until 1938, during the period of cohabitation as illustrations of the defendant's treatment and demeanor: (It was impossible for her to recall each occurrence during this period) (a) shortly after marriage the defendant told plaintiff that a woman in the community had recently died and that she was buried in the dress that she expected to wear at her wedding with defendant and then referred to a certain suit of clothes he (the defendant) was to have worn at the wedding; (b) the plaintiff was leaving the bedside of her sick mother when the defendant told her he had been to a certain place in the community and had illicit relations with women, the price paid and named one woman; (c) a woman came to her home and told the number of times her husband had visited her, but she wanted him to visit her in the future and she would not give testimony against him; (d) near a filling station when in a car defendant took a pistol, placed his arm around her, placed the pistol in her face and angrily stated, "I have a damned good will to blow your head off;" (e) he was going to kill everything on the place that breathed the breath of life and then kill himself; (f) he was going to get the Joneses (her family) and wouldn't leave enough to bury the dead; (g) while hanging a gate he became angry and butted his head against a fence post; (h) he was dissatisfied with his marriage and wanted to pay her to leave him; (i) he came from the field in a bad humor and was disagreeable; (j) while at the cow pen milking he threatened to hit plaintiff with a board. These facts in part are corroborated by the testimony of Miss Sallie Jones and W. L. Koon. She weighed 84 pounds when she left the defendant and her health was gradually getting worse. She had

been under the treatment of Dr. Blake and had spent some time in a hospital and some time had been spent in the mountains in an effort to recover her health, which appeared to improve when she was not cohabiting with the defendant.

The defendant in his testimony denied many of the incidents or happenings and many witnesses were by him produced and testified that over the years they had visited in the home of the parties to the suit and that the husband was affectionate and considerate and the witnesses had no knowledge of matrimonial disturbances. The chancellor below reconciled these disputes and conflicts in the testimony by entering the decree assigned as error here. We fail to find merit in this assignment. See Gratz v. Gratz, 137 Fla. 709, 188 So. 580; Henderson v. Henderson, 137 Fla. 770, 189 So. 24. There is a presumption in law and equity as to the correctness of the ruling of the lower court and the burden here was on the appellant to show that error had been committed. We fail to find an abuse of discretion. See Durham v. Durham, 137 Fla. 506, 188 So. 609; Jessen v. Jessen, 140 Fla. 670, 191 So. 768.

It is next contended that there is no testimony in the record to support that portion of the final decree in holding that the plaintiff and the defendant were tenants in common each of an undivided one-half interest of the property accumulated by the parties and described in the pleadings. The record shows that the husband at the time of marriage owned 12 or 13 acres of land located near Punta Gorda and some few acres had been cleared and set in fruit trees and a four-room boxed house erected thereon. The wife inherited 17 head of stock cattle and the same were moved to the Punta Gorda home. Other lands and property located in Punta Gorda were bought and additional fruit trees set, the cattle increased, and each of the parties testified that his or her money went into the additional property accumu-

lations. The chancellor below was of the opinion and held that the property accumulated by the parties after marriage was paid for by the joint efforts and money of the parties to this suit. There is evidence in the record to support this view. The parties lived together nearly 35 years and accumulated property. It is well settled where a wife contributes money and industry over a period of years in the acquisition of property she is granted a special equity therein. See Carlton v. Carlton, 78 Fla. 252, 83 So. 87.

We fail to find error in the record and the decree appealed from is hereby affirmed.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

BUFORD, J., concurs in opinion and judgment.

Chief Justice TERRELL and Justice THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927 and Rule 21-A of the Rules of this Court.