### LENA MASILOTTI v. ANGELO MASILOTTI

7 So. (2nd) 132                                    Division B
March 13, 1942              Rehearing Denied April 20, 1942

Wood & Milledge, and Stanley Milledge, for appellant.

Horton & Strahan, and Irving Ellsworth Lewis, for appellee.

CHAPMAN, J.:

This cause is here on appeal from a final decree of divorce in behalf of the plaintiff-husband entered by the Circuit Court for Dade County, Florida, on grounds of extreme cruelty and ungovernable temper. The decree awarded the wife permanent alimony of $100.00 per month, but on a subsequent hearing, the permanent alimony was reduced to $10.00 per week, or approximately $40.00 per month. The wife has perfected her appeal to this Court and assigns as error the entry of the final decre of divorce on the grounds of extreme cruelty and an ungovernable temper and asserts that the chancellor below failed to apply to the facts adduced the principle of con- donation, as recognized by this Court in Phillips v. Phillips, 146 Fla. 311, 1 So. (2nd) 187; Crews v. Crews, 130 Fla. 499, 178 So. 139; Ringling v. Ringling, 119 Fla. 210, 161 So. 406; Fekany v. Fekany, 118 Fla. 698, 160 So. 192, and other Florida decisions.

The rule enunciated by this Court is that a divorce granted on the ground of extreme cruelty will be denied where there is no actual bodily violence, unless the treatment complained of be such as damages health or renders cohabitation intolerable and unsafe, or unless there are threats of mistreatment of such kind as to cause reasonable and abiding apprehension of bodily violence so as to render it impracticable to discharge marital duties. See Windham v. Windham, 144 Fla. 563, 198 So. 202; Chisholm v. Chisholm, 98 Fla. 1196, 125 So. 694; Palmer v. Palmer, 26 Fla. 215, 7 So. 864; Beekman v. Beekman, 53 Fla. 858, 43 So. 923; Trigo v. Trigo, 90 Fla. 60, 105 So. 123; Hancock v. Hancock, 55 Fla. 680, 45 So. 1020, 15 L.R.A. (N.S.) 670; Hayes v. Hayes, 86 Fla. 350, 98 So. 66, Baker v.

Baker, 94 Fla. 1001, 114 So. 661; Kellogg v. Kellogg, 93 Fla. 261, 111 So. 637; Van v. Van, 100 Fla. 612, 129 So. 886; Prall v. Prall, 58 Fla. 496, 50 So. 867, 26 L.R.A. (N.S.) 577; Dean v. Dean, 87 Fla. 242, 99 So. 816; Donald v. Donald, 21 Fla. 571; Hickson v. Hickson, 54 Fla. 556, 45 So. 474; Phelan v. Phelan, 12 Fla. 449; Fuller v. Fuller, 23 Fla. 236, 2 So. 426.

If habitual indulgence in a violent and ungovernable temper is relied upon, it is necessary to show that defendant's temper was displayed toward the plaintiff habitually so as to injuriously affect the health, personal safety and conduct or to render life an oppressive and intolerable burden, making it impracticable to perform marital duties. See Godwin v. Godwin, 139 Fla. 302, 190 So. 603; Riesner v. Riesner, 130 Fla. 489, 178 So. 164; Nolen v. Nolen, 121 Fla. 130, 163 So. 401; Croghan v. Croghan, 78 Fla. 455, 83 So. 460; Hickson v. Hickson, 54 Fla. 556, 45 So. 474; Prall v. Prall, 56 Fla. 521, 47 So. 916.

In the case of Phillips v. Phillips, *supra,* we held that as a general rule the condonation of a marital offense deprived the condoning spouse of the right of thereafter seeking a divorce for the condoned offense. If there is no breach of the condition after the condonation, the forgiveness stands as complete, absolute, and irrevocable. Likewise, condonation is the forgiveness of all antecedent matrimonial offenses on condition that it shall not be repeated and that the offender shall thereafter treat the forgiving party with conjugal kindness.

The record discloses that the parties hereto are Italian-Americans. They married in New York during the year 1906, and have two grown children. The parties moved to Vineland, New Jersey, where the

husband obtained employment as a tailor; the wife also obtained employment; and in 1922 or 1923 the husband-plaintiff opened a gents furnishing, tailor shop and cleaning plant. The business was prosperous and expanded, and in 1928 was incorporated as Cumberland Cleaning Company. The wife worked in the cleaning plant along with her husband and several employees.

The acts of extreme cruelty and ungovernable temper largely relied upon occured after 1906 and prior to the year 1931. There is sufficient testimony in the record to sustain the decree for divorce on these grounds, provided a reconciliation or a condonement thereof was not effected. The wife was of the Catholic faith and did not pray for a divorce, but sought temporary and permanent alimony, suit money and counsel fees.

The husband, in 1921 or 1922, left his wife and cohabited with Lottie LaDore for approximately three months at Fairview, New Jersey, and then separated from her and returned to his original home and cohabited with his wife, the appellant. The furniture was likewise returned to the home of Lena Masilotti. Some four or five years thereafter, he left his wife and cohabited with Catherine Jasinski, and the appellant to this suit moved from their home and lived with her daughter for about four months. After about four months he left the Jasinski woman and returned to the home of his wife. Later he cohabited with Lillian DeMarco, but again returned to live with the appellant. The appellant testified that the acts of cruelty and ungovernable temper charged by her husband against her were caused by her continuous denunciation of her husband's marital infidelity. The

husband, in each instance, deserted his mistress, and returned to and continued cohabitation with his wife. The several acts of cruelty and ungovernable temper rendering impracticable a discharge of the marital duties were by the husband condoned when deserting each mistress, and returning to and continuing to cohabit with his wife for a period of many years prior to filing this suit.

The burden of establishing the material allegations of the bill of complaint were on the plaintiff below. He resided with his wife practically five years prior to the filing of the bill of complaint in Dade County, Florida. He came to Florida in September, 1939. The wife received the following letter written by him while in Florida, viz:

"Coral Gables, Fla.
Nov. 18, 1939

"Dear Wife:

I have received letters from the lawyer wherein he says that you have threatened to have me arrested and brought back to Vineland all of which is unnecessary because I am ready to come back and probably soon.

"You must know that while you are making money and place it in the bank, I am not earning anything but I am about to go crazy because the affairs are very bad and I am very sorry to have started. You being a good wife and understanding how much I wish well for you, should do me the favor of selling the house and come here to Florida and help me until the business is established. Regarding the divorce, do not think about it any more because I do not intend to start. Do you not think that one wife is enough? Do you think that I am looking for any

more trouble? Do not forget the 28th of this month it is my birthday and I expect a nice present from you. With the hope of re-seeing you at Christmas, dear, dear kisses from your unforgettable husband.

Angelo."

Plaintiff below testified that one night about five years ago "while I was sleeping I *heard* something choking me. I woke up and find her lying on top of me with both hands around my throat pressing pretty hard. I threw her off and went into another room and slept the night." He continued cohabitation after this act of cruelty.

In the case of Phillips v. Phillips, *supra,* (text 146 Fla. 316-17), this Court said:

"So it may be said that we have presented in this case both the acts of condonation and a reconciliation subsequent to the commission of the alleged acts of cruelty by the wife to the husband.

"In R.C.L. 379, Sec. 170, it is said:

" 'As a general rule the condonation of a marital offense deprives the condoning spouse of the right of thereafter seeking a divorce for the condoned offense. If there is no breach of the condition after the condonation the forgiveness stands as complete, absolute and irrevocable.'

"In Youngs v. Youngs, 130 Ill. 230, 22 N.E. 806, 6 L.R.A. 548, 17 Am. St. Rep. 313, the Court said:

" 'The evidence tends to show, and is, as we think sufficient to establish, condonation. The last act of personal violence to the complainant, proved, took place sometimes in December, 1886; but the evidence shows that the complainant continued to live and cohabit with the defendant until she left him about the first of the following March. No subsequent con-

duct on the part of the defendant is shown which can be held to be sufficient to do away with such condonation, and we think the chancellor was correct in holding it to be a bar to the complainant's right to relief.' "

"Likewise, in 19 C. J. 86, par. 199, the rule is: '199) b. Resumption of Interrupted Cohabitation.— A voluntary resumption of cohabitation which has been interrupted because of the commission of a marital offense condones the offense the same as the continuance of a cohabitation which has not been interrupted, and this rule applies to cases of cruelty, or desertion. The mere return, however, by the wife to the domicile of the husband for brief periods to visit their children, or to perform some benevolent act, is not condonation."

The failure of the chancellor below to apply the above principles of condonation to the facts adduced in the case at bar was erroneous.

The final decree directed Angelo Masilotti to pay Lena Masilotti the sum of $100.00 per month as alimony in consideration of her contribution to the plaintiff's business. The chancellor, at a subsequent date, reduced the monthly payment of $100.00 to $10.00 per week. Confusion exists as to whether or not the monthly allowance of $100.00 was intended as a return to the wife of money advanced by her and used by the plaintiff below in the promotion and expansion of his business, or whether it was alimony authorized by statute. It is recognized that when a wife by labor and industry or when she advances money to her husband and used by him in a business, the law will not permit a forfeiture thereof to the husband. See Carlton v. Carlton, 78 Fla. 252, 83 So.

87; Taylor v. Taylor, 100 Fla. 1009, 130 So. 713; Heath v. Heath, 103 Fla. 1071, 138 So. 796; Windham v. Windham, 144 Fla. 563, 198 So. 202; Strauss v. Strauss, 148 Fla. 23, 3 So. (2nd) 737. If the monthly payment of $100.00 was intended as a return to her of money advanced to her husband, we think the amount is inadequate. Likewise the amount would be out of line as alimony. The sum of $50.00 per month, as shown by the record, would be a reasonable and just amount to be decreed as alimony. The sum of $150.00 additional is a reasonable sum to be paid by the appellee as balance due on fee of attorney for appellant; the sum of $200.00 having been allowed by a previous order of this Court.

That part of the final decree granting plaintiff below a divorce and fixing the amount of monthly payments to be paid by the husband to the wife was erroneous, but otherwise the decree is free from error. The decree is therefore affirmed in part and reversed in part, with directions for further proceedings in the lower court not inconsistent with this opinion. The costs of this appeal are hereby taxed against appellee.

It is so ordered.

BROWN, C. J., TERRELL, and CHAPMAN, JJ., concur.