**FRANCIS F. COLEMAN v. ROSE MARCELLA COLEMAN**

26 So. (2nd) 445                                    January Term, 1946
May 31, 1946                                               Division A
Rehearing denied June 21, 1946

*George C. Simpson,* for appellant.
*Henry K. Gibson,* for appellee.

CHAPMAN, C. J.:

The appellant, Francis F. Coleman, filed in the Circuit Court of Dade County, Florida, a bill of complaint seeking a divorce against his wife, Rose Marcella Coleman, on the Grounds (a) extreme cruelty; (b) desertion; and (c) by an amendment to the original bill the wife was charged with the habitual indulgence in a violent and ungovernable temper. The parties were married in 1925 at Cincinnati, Ohio, where they lived together when the husband, on December 1, 1942, because of the wife's alleged conduct, withdrew cohabitation

and on August 1, 1944, became a resident of Miami, Dade County, Florida.

The defendant below (appellee here) by an appropriate answer to the bill of complaint and amendment denied (a) the charge of desertion; (b) the charge of extreme cruelty; and (c) alleged that on March 20, 1943, she filed in the Court of Common Pleas of Hamilton County, Ohio, a petition against her husband (appellant here) in which she alleged that the husband had deserted and abandoned her without cause and prayed for an award of alimony for her support and maintenance and an allowance for the support of their minor son about eleven years of age.

The defendant husband in the Ohio suit answered the petition and by cross petition alleged that the wife (appellee here) had violated her marital duties and had been guilty of gross neglect of duty and extreme cruelty and in the same pleading prayed for a divorce and the custody of their child. On December 18, 1944, the issues were joined, witnesses adduced and testimony heard, and the Court then decided the several issues in favor of the wife and against the husband and entered a decree and judgment finding, among other things, that the cross plaintiff husband had violated his marital duties and had been guilty of wrong doing toward his wife and ordered the husband to pay a named sum monthly to the wife; that said adjudication by the Court of Common pleas of Hamilton County, Ohio, put at rest and repose all matters and things alleged in the bill of complaint and amendment, and in law constitutes *res adjudicata*. Copies of the pleadings filed in the Ohio Court between the parties were attached to and made a part of the answer of the wife.

An order of reference was made and entered with the direction that the Special Master take all the testimony offered by the parties and to make findings and recommendations as to an appropriate decree. The Special Master held that the plaintiff had sustained the allegations of the bill of complaint and the amendment thereto and that the husband be granted a divorce. It was his conclusion that the Ohio Court had adjudicated the charge of gross neglect of duty and extreme cruelty, but not the charge of habitual indulgence by the wife

in a violent and ungovernable temper prior to the date of separation on December 1, 1942.

Exceptions were filed to the Special Master's Report on the grounds (1) the testimony failed to establish extreme cruelty since August 14, 1943; (2) the facts establishing extreme cruelty since August 14, 1943 are immaterial; (3) the Special Master erred in finding that the defendant wife had been guilty of habitual indulgence in a violent and ungovernable temper toward her husband; (4) that the issue of a violent and ungovernable temper was *res' adjudicata* as appears by the record; (5) The Special Master disregarded and failed to recognize the decree of the Court of Common Pleas of Hamilton County, Ohio, dated December 18, 1944, between the parties and to give it full faith and credit to which it was entitled under Section 1 of Article 4 of the Federal Constitution. The Chancellor below sustained the exceptions and dismissed the suit, the plaintiff appealed.

The residence of the plaintiff in Florida for a period of ninety days, or more, prior to filing the suit is established by the testimony of the plaintiff and a Mrs. Spears. Plaintiff Coleman testified that his wife would get mad and "fly off the handle" at things he had nothing to do with and frequently about things occurring in his absence and on his return home she would take her spite out on him; that she would abuse, curse and berate him and keep him awake at all hours of the night. "She just kept it up and kept it up—I never argued back with her." "Her pet names for me for about twenty years ranged from a 'damn fool' to a '—— —— ——.' "

He testified that she failed to discharge her duties as a wife in that she failed to assist his mother in the preparation of the family meals; she slept late in the morning—often as late as noon; she went out in the evenings without her husband and sometimes stayed over night without giving an explanation of her whereabouts. She nagged the plaintiff continuously and frequented bingo games and gambled on horse races. She had fits of anger and called plaintiff vile and unspeakable names. On one of these occasions she took an alarm clock—the nearest thing to her—and threw it at plaintiff's head. She threatened to shoot plaintiff on many occasions.

The plaintiff by profession was a pharmacist and employed in his father's drug store. She went to the store where plaintiff was employed and engaged in heated arguments with him. She went through plaintiff's personal mail and that of his employer. When plaintiff objected to her activities, she resorted to profanity and called him insulting names in the presence of others. She continued to nag and pester the plaintiff and continuously interfered with the duties of his employment. She failed to keep house and plaintiff testified that "if there was any cooking to be done I had to do it and I had to do all the cleaning." Her conduct and attitude toward plaintiff continuously from the time of marriage until he left Ohio in August, 1944, affected his nerves and health and rendered life burdensome and intolerable. He testified, "it was just impossible to live with her."

The testimony of plaintiff's father and mother was taken by deposition and appears in the record. The plaintiff was employed during most of his married life as a pharmacist in his father's drug store. The parties after marriage moved into an apartment but later moved into the home with his father and mother. Their testimony corroborates that of their son on many important points, and, in fact, is not disputed in any detail as the defendant did not offer any testimony, but through counsel interposed the defense of *res adjudicata*.

Pertinent portions of the Ohio decree are viz:

"This cause came on this day to be heard on the petition, cross-petition and the evidence, and the court finds that the plaintiff was a resident of this state for more than a year before filing the petition and had a bona fide residence in this county for more than thirty days before filing the same; that the parties were married as alleged in the petition; and that the defendant, in violation of his marital duties, has been guilty of gross neglect of duty toward plaintiff.

"Defendant's cross-petition is therefore dismissed at his costs, and it is further considered by the court that defendant pay to plaintiff as alimony and for the support of their child, Andrew John Coleman, the sum of fifteen ($15.00) dollars

per week until further order of court, and the same is hereby made a charge on all the real estate or any interest therein which the defendant may own."

Based on the foregoing state of the record, two questions present themselves here for adjudication. First, was the decree dated December 18, 1944, between the parties, as entered by the Hamilton County, Ohio Court of Common Pleas, *res adjudicata* on the several issues made in the case at bar? It must be conceded that the decree relied upon is such that is recognized by Section 1 of Article 4 of the Federal Constitution and that the courts of Florida must and are required to award to it full faith and credit. Givens v. Givens, 121 Fla. 270, 163 So. 574; Thompson v. Thompson, 226 U.S. 551, 33 S. Ct. 129, 57 L. Ed. 347. It appears that the Ohio court acquired jurisdiction of the parties, and therefore when the decree was entered it became res adjudicata as to the issues presented in that case. McClay v. McClay, 147 Fla. 77, 2 So. (2nd) 361. The issue adjudicated by the Ohio court was the charge of extreme cruelty by the wife toward the husband. The charge of violent and ungovernable temper was not an issue and therefore was not by the decree of the Ohio court adjudicated.

The burden of proof to establish a former adjudication, by law, was on the defendant below. The test of the identity of the causes of action, for the purpose of determining the question of *res adjudicata,* is the identity of the facts essential to the maintenance of the actions. It is the essence of estoppel by judgment that it be made certain that the precise facts were determined by the former judgment. If there is any uncertainty to the matter formerly adjudicated, the burden of showing it with sufficient certainty by the record or extrinsically is upon the party who claims the benefit of the former judgment. See Prall v. Prall, 58 Fla. 496, 50 So. 867, 26 L.S.A. (N.S.) 577; Gray v. Gray, 91 Fla. 103, 107 So. 261; City of Miami Beach v. Miami Beach Improvement Co., 153 Fla. 107, 14 So. (2nd) 172; Bagwell v. Bagwell, 153 Fla. 471, 14 So. (2nd) 841. Our conclusion, based on the record, is that the question or charge of a violent and ungovernable temper was not an issue in the Ohio court—nor was it there

adjudicated. The burden of establishing this precise fact under our adjudicated cases rested on the party claiming it viz, the defendant below.

In many cases we have held—and it is established law—that if habitual indulgence in a violent and ungovernable temper is relied upon, it must be shown that the defendant's temper was displayed toward the plaintiff habitually so as to injuriously affect health, personal safety and comfort or to render life an oppressive and intolerable burden, making it impracticable to perform marital duties under such a burden. See Masilotti v. Masilotti, 150 Fla. 86, 7 So. (2nd) 132, and similar cases.

The second question presented is whether or not the testimony of the plaintiff below established the charge of habitual indulgence in a violent and ungovernable temper so as to bring his case within the rule enunciated *supra*. It was the view and recommendation to the Chancellor by the Special Master that plaintiff's evidence, in light of the entire record, justified such a conclusion. Our careful consideration of the entire record leads to the exact conclusion as reached by the Special Master. The bonds of matrimony were never designed to wreck the health or to become burdensome or materially destroy the business of those assuming them, but on the other hand they are intended to promote or advance the mutual best interest and general welfare of all those entering the portals of that ancient institution.

We have not overlooked the oft reiterated rule that the findings of the Chancellor on facts where the evidence is heard by him will not be disturbed unless clearly shown to be erroneous or that his conclusions on the facts are manifestly against the weight of the evidence, as held by us in Farrington v. Harrison, 95 Fla. 769, 116 So. 497. The order of dismissal challenged on this appeal is clearly against the manifest weight of the testimony which sustained the plaintiff's charge that the wife was guilty of habitual indulgence of a violent and ungovernable temper which affected plaintiff's health and rendered life not only burdensome but intolerable and further cohabitation with her impossible. The burden of proof under our decisions rested on the wife to establish that

these precise facts were in issue in the Ohio court, but on this record she failed to carry this burden.

An inference may be drawn from a statement appearing in one of the briefs to the effect that a certain pleading in the record failed to measure up to the recognized standard of good pleading. This criticism may have merit, but it could be expanded and made applicable to the pleadings of both parties to this controversy. It has been the writer's experience that after a careful marshaling of all the facts and after a consultation of the applicable authorities, an attorney then may undertake the drafting of a proposed pleading. Good workmanship often requires or demands several draftings prior to arriving at a satisfactory pleading to be filed in a litigated cause.

The order of the lower court dismissing the bill of complaint is hereby reversed with directions to enter for the appellant here (plaintiff below) a decree of divorce according to the prayer of the bill of complaint and amendment thereto.

It is so ordered.

TERRELL, BUFORD and ADAMS, JJ., concur.