132 So.2d 471 (1961)
Rose SEIFERTH, Appellant,
v.
Russell J. SEIFERTH, Appellee.
No. 60-557.
District Court of Appeal of Florida. Third District.
August 31, 1961.
Rehearing Denied September 18, 1961.
*472 Robert E. Rutledge, Jr., So. Miami, for appellant.
W.F. Esslinger, Miami, for appellee.
Before PEARSON, TILLMAN, C.J., and HORTON and CARROLL, JJ.
CARROLL, Judge.
The appellee Russell J. Seiferth filed suit for divorce on the ground of extreme cruelty against his wife the appellant Rose Seiferth. She answered, counterclaimed for alimony unconnected with divorce and sought an interest in certain property of the parties and in the husband's plumbing business. Trial before a master prompted recommendations which resulted in a final decree granting the husband a divorce, denying separate maintenance, awarding the wife alimony of $100 a week, and a $10,000 equity in the husband's plumbing business, and allowing him the use of the jointly owned furnished residence until sold. Fees allowed to the wife's attorney and to the master and other costs in the case were charged against the husband.
On the wife's appeal she contended it was error to grant the divorce, that she was not accorded a proper share in the business, and that the court should have dismissed the suit because of resumption of cohabitation between the parties during its pendency.
Regarding the issues relating to the divorce and the wife's equity in the husband's business, the evidence presented was extensive and was not without conflict. The fact that we may read the evidence to show a stronger case for the wife and a poorer case for the husband is no sufficient basis to disturb the chancellor's decision on those issues. Lauderdale v. Lauderdale, Fla.App. 1957, 96 So.2d 663. And we hold against the appellant on her contention that the court was in error in refusing to dismiss the cause when told that the parties had resumed cohabitation for a period during the pendency of the suit. The denial of the motion to dismiss was based on a finding that the element of forgiveness, essential for condonation, was "completely lacking in the resumption of the relationship herein." The resumption of cohabitation, per se, is not necessarily condonation. It may imply a condoning, but the principal element of the defense of condonation is the *473 freely exercised intent to forgive. Fekany v. Fekany, 118 Fla. 698, 160 So. 192; Kollar v. Kollar, 155 Fla. 705, 21 So.2d 356; Mickler v. Mickler, Fla.App. 1958, 101 So.2d 157; 10 Fla.Jur., Divorce, Separation and Annulment, § 51. On the record before us the finding on this point is not shown to be clearly wrong.
The cross-assignments filed by the husband on which he contended that the chancellor was in error in awarding the alimony, in holding that the wife was entitled to an equity in the business and in charging expenses of the litigation and costs against him, have been examined in the light of the record and of the briefs and are found to be without merit.
Affirmed.
PEARSON, TILLMAN, C.J., concurs in part and dissents in part.
PEARSON, TILLMAN, Chief Judge (concurring in part and dissenting in part).
I concur in each of the conclusions reached by the majority except upon the issue of condonation. The complaint in this cause was filed on January 21, 1959 and when the cause was at issue it was referred to a special master in chancery. The special master filed his report on September 14, 1959 and both parties filed exceptions thereto. On November 24, 1959, the appellant filed a motion to dismiss upon the ground that the plaintiff-husband's action was barred by acts amounting to condonation which it was alleged had occurred after the filing of the action. The chancellor properly treated this motion as an amendment to the answer and re-referred the cause to the special master for the purpose of taking further testimony to determine the issue of condonation. The special master made findings upon the issue as follows:
"Findings of Fact.
"The aforementioned hearing was held for the specific purpose of taking testimony relative to the issue as to whether cohabitation and acts of intercourse indulged in between the parties since the institution of this action for divorce constitute condonation under the laws of the State of Florida.
"On or about the 15th or 16th of September, 1959, the defendant, either by invitation of the plaintiff or my (sic) mutual arrangement, decided to meet at the Tiziano Avenue home, then occupied by the plaintiff, for the purpose of discussing the master's report. The parties planned to partake of a steak dinner as a prelude to their discussion, but apparently before they could sit down to the repast an argument ensued which grew in vehemence and intensity and culminated in the defendant sustaining a broken wrist.
"They attempted to proceed with the steak dinner, but the acuteness of the pain and the realization of its seriousness finally prompted them to seek the aid of a hospital. The plaintiff then drove the defendant to a hospital, but since she had eaten rather extensively, it was impossible to administer the proper anaesthetics in order to set the bones that night. The defendant therefore remained at the hospital overnight, and the following day the plaintiff called upon her and paid the hospital bill, and since she was so badly incapacitated, it was considered that it would be beneficial for her to temporarily resume living at the Coral Gables home. Upon arriving home the issue of alloting separate rooms to each other apparently could not be amicably resolved. Both insisted upon using the master bedroom. Plaintiff felt, since he was paying temporary alimony which enabled defendant to occupy her own quarters, that he was entitled to the use and occupancy of his own bed and the master bedroom. His reason for not capitulating and using another room which was available was `My pigheaded attitude about being thrown *474 out of that house.' Not being able to resolve the matter sensibly, they occupied the same double-bed.
"Prior to the above related happenings, it was admitted by both parties that on a few occasions they had indulged in sexual intercourse.
"There is no question but that subsequent to the above related cohabitation, the parties again indulged in sexual intercourse. The testimony varies as to the regularity or the number of indulgencies, but indulge they did up to and about December 9, 1959.
"It is also evident that the defendant moved her personal effects back into the abode."
* * * * * *
"The special master therefore feels that in accordance with the preponderance of the holdings as set forth in the referenced cases and in accordance with his findings, that for condonation to be a defense to a divorce action, it must appear that the foregiveness was freely given and was entirely voluntary and that, since it is an affirmative defense, it must be proved by the party asserting same, and this she failed to do. Further, a showing of reconciliation or an act of penitence for past misconduct must be manifest, and that, most important of all, is that condonation of past matrimonial offenses is impliedly conditioned upon future good behavior of the offending spouse."
The special master's findings of fact and recommendations were approved by the court and the chancellor proceeded with the merits of the divorce.
It is my view that upon the facts as found by the special master, condonation appeared as a matter of law. I would not dispute the law of condonation as found by the majority and set forth in the opinion. I would point out, however, that the cases therein cited each deal with alleged acts of intercourse occurring prior to the institution of an action for divorce by a wife. In this case we are faced with an entirely different circumstance in that the special master found, and the court accepted the facts to be, that the defendant-wife was brought back into the marital home and the parties remained therein and cohabited in all respects as husband and wife except that it was found that forgiveness was not a part of this cohabitation. Under such circumstances, it is my view that condonation appears as a matter of law and is required from the public interest in morality. Cf. Masilotti v. Masilotti, 150 Fla. 86, 7 So.2d 132; Raynes v. Raynes, Fla.App. 1961, 128 So.2d 417.
I would therefore reverse the final decree of divorce and remand the cause to the chancellor with directions to dismiss the complaint.