JAMES DAWSON, Appellant, v. EVA V. DAWSON, Respondent.

St. Louis Court of Appeals, October 26, 1886.

1. STATUTES—RE-ENACTMENT — CONSTRUCTION OF.—Words used in a statute will be construed with reference to their generally accepted meaning at the time of the passage of the act, there being no presumption that the legislature in re-enacting the statute intended that the words should have an enlarged meaning.

2. DIVORCE—HABITUAL DRUNKENNESS—OPIATES.—The statute which makes habitual drunkenness for the period of one year a ground for divorce, includes only alcoholic intoxication.

3. ———— The habitual use of opiates, whose tendency is to render the user callous, reckless, untruthful, and stupid, to cause physical prostration, to undermine and destroy all the objects of the marital relation, and which habit is usually incurable, constitutes such indignities as furnish ground for a divorce.

APPEAL from the St. Louis County Circuit Court, ELIJAH ROBINSON, Special Judge.

*Reversed and decree for the plaintiff.*

ALEX. MARTIN, for the appellant : Habitual drunkenness produced by opium is within the spirit of the statute. *Barber v. Barber*, 14 Laws Rep. 375. Habitual drunkenness produced by opiates is an indignity for which a divorce may be granted. *Kimpf v. Kimpf*, 34 Mo. 211.

ZACH J. MITCHELL, for the respondent : Intoxica-

tion produced by the use of opiates does not constitute drunkenness within the meaning of the statute. Comp. Laws Conn. 378-9.

ROMBAUER, J., delivered the opinion of the court. .

This is an action for divorce. Two of the statutory grounds are assigned by the plaintiff : 1. That the defendant has been addicted to habitual drunkenness for the period of one year, next preceding the institution of this suit. 2. That she has offered to the plaintiff such indignities as to render his condition intolerable.

The defendant denied the allegations of the petition and filed a cross-bill on the ground of indignities offered to her. The cause was tried by a special judge selected by the parties, who, upon the hearing of the cause, dismissed both bill and cross-bill, and the plaintiff alone appeals.

For the purpose of considering the two propositions of law which are raised by the record, a preliminary statement of such facts as bear upon them is essential.

The plaintiff is a well-to-do farmer, advanced in years, and was at the date of his marriage a widower, having a family of grown children. The defendant, much younger than the plaintiff, was a childless widow, and a resident of Memphis, Tennessee. The plaintiff made her acquaintance in the summer of 1882, during a short visit to Memphis, and married her in December, 1882, his previous acquaintance with her being very slight. He at once brought her to his farm in St. Louis county, where they continued to live together until November, 1884. At this last date, the defendant, with her infant daughter Bessie, issue of her present marriage, left in company of her sister, a resident of Memphis, for that place on an extended visit. This departure was with the plaintiff's consent.

The present suit was instituted by the plaintiff February 25, 1885, and prior to the defendant's return, and

a copy of the petition was served upon her in the city of Memphis.

The evidence introduced upon the hearing established beyond a reasonable doubt, that the defendant, either was already at the date of the marriage a confirmed consumer of opium in its various forms of laudanum and morphine, or that she became such shortly thereafter, and that she continued in the habit during the entire period of co-habitation.

On that subject, the judge who tried the cause, in an opinion embodied in the record, and referred to by both parties, states :

"I am convinced by the great preponderance of the testimony in the cause, that she (the defendant) engaged the servants and employes about the place to procure laudanum and morphine for her ; that she procured the same herself on different occasions ; that when endeavoring to procure these drugs she assumed a name other than her own for the purpose of concealing her identity ; that she visited a neighboring store at an unseemly hour of the night for the puprose of procuring them, and that she endeavored to keep from her husband the knowledge of all these facts."

This statement is fully borne out by the record, and the learned judge might have added with equal propriety, that she disposed of small proceeds of the farm in exchange for the baneful drug. That when unable to obtain by these means sufficient to satisfy her appetite, she finally put her jewelry in pawn with a storekeeper for the same purpose. Also that the continued use of the drug, exerted its usual effect on her constitution and habits, undermining the former, and rendering her, to a great extent, callous to her surroundings.

As to the ordinary effect of the drug, on those addicted to its continual consumption, a medical expert testifies :

"The absorption of the drug is a dislocation of all functions, it causes the patient to dream the most beau-

tiful dreams, and see the most lovely visions, which are followed by a stage of corresponding depression, which causes the patient to fall as much below, as he has been above the natural plane."

And again :

" An overdose of alcohol presents almost the same phenomena witnessed in an overdose of morphine, laudanum, or opium, that is, alcoholic coma is induced, in which the symptoms are almost precisely the same."

As to the effects upon the moral character of the patient, the same expert states :

"It destroys the moral tone. An opium eater is necessarily a liar. No chronic opium eater tells the truth. They will disregard the ordinary requirements of life. They are willing to present themselves in society in a very unenviable light, thinking nothing of it. They disregard the requirements of the household, their relations to their children and family—all these they set at naught."

An examination of medical authorities on the subject fully confirms this expert testimony. In fact, it must be conceded that the habit of intoxication by opiates, when once thoroughly contracted, becomes incontrollable, and that its results, while in the main the same, are far more baneful than those of alcoholic intoxication.

Another expert, and a physician of very extended experience, testifies that of a great number of cases that came under his observation, there was only one in which a habitual consumer of opium succeeded in ridding himself of the habit.

Such being the testimony in the case, the plaintiff contends that he is entitled to a divorce on the first ground stated in his petition, and that the trial court erred in holding that intoxication by opiates was not drunkenness within the purview of the statute.

After some hesitation, we have come to the conclusion that the view taken by the trial court on this

subject is the correct one. The question is not whether intoxication by opiates is not fully as baneful in its results as alcoholic intoxication, but in what sense the legislature has used the word drunkenness. The act concerning divorce and alimony, approved January 24, 1835, made it a ground of divorce when either party was addicted to habitual drunkenness for the space of two years. The law has remained the same ever since, except that the time has been changed from two years to one.

It is a historic fact that in 1835, and for many years thereafter, intoxication by opiates was comparatively rare, while alcoholic intoxication was common and generally known by the term of drunkenness. The meaning of the word drunkenness, "in its plain, ordinary and usual sense," could not at that time have been anything but alcoholic drunkenness. Nor can it be said that the legislature in re-enacting the statute in almost the identical words ever since, intended to change the meaning of the word drunkenness from its meaning as originally fixed. What little authority can be found on this subject, in the decisions of other tribunals and in the opinion of text writers, seems to conform to the view as above expressed. Barber v. Barber, 14 Law Rep. 375; 1 Bishop on M. & D. sec. 318.

The plaintiff, however, is entitled to a divorce on the second ground alleged. It is established by a great preponderance of the testimony that the habitual consumption of opiates had its usual effect upon the defendant. Her fits of excessive hilarity followed by drowsiness, stupor, and occasional complete prostration are well attested. Her denial of the habit to her husband, when charged with it, and her contradiction of a number of unimpeached witnesses, tend to show that the indulgence of the habit has made her untruthful and undermined her moral nature in that respect. One of her own witnesses, a minister of the gospel, expressed himself, after a visit to her house, that he thought the lady was

crazy; that she was a fit subject for a lunatic asylum, and would be there in a few days, and says that such was the impression she made on him at that time.

That the habit had become with her wholly uncontrollable seems evident from the fact, that within a period of less than two years, according to the testimony, she bought and caused to be bought for her use, nearly two hundred bottles of opiates in its various forms. That she endeavored to hide these purchases from her husband; that she made reckless efforts to obtain the drug, at times leaving the house during the small hours of the night.

The use of opiates for the purpose of intoxication by the defendant, was suspected if not known by her husband, prior to her departure for Memphis in December, 1884; but there is little doubt but that he was neither aware of the extent to which she had used the drug, nor of the humiliating steps to which she had frequently resorted for the purpose of obtaining it, until after her departure.

Under these circumstances we find that the constant indulgence of this habit by the defendant, and its results as shown by the testimony, were indignities of a character to render her husband's condition intolerable.

That the habitual and excessive use of opiates may destroy all objects of the marriage relation admits of no doubt, yet we can not supply by judicial construction a seeming legislative omission. Courts can not make the habitual use of opiates for the purpose of intoxication, a cause of divorce on the ground of drunkenness, but where the effects of such use are such as to render the condition of the other party intolerable, they should treat the effect as indignities offered. They should construe the clause of the statute concerning indignities liberally, so as to afford a remedy for a mischief, which is clearly within the spirit although not within the letter of any of the other clauses. *Kempf v. Kempf*, 34 Mo. 214; *Cannon v. Cannon*, 17 Mo. App. 393.

The testimony in this case fails to show in direct terms to what extent the plaintiff's condition did become intolerable, but we are justified to assume that the condition of any husband, if not utterly devoid of sensitiveness, would become intolerable within the meaning of the statute, by conduct on the part of his wife, which is designed to destroy all companionship between them, and tends to separate him socially from his neighbors,. regardless even of the constant mortification to which he is subjected by the conduct of his wife in their daily intercourse.

It results from the views thus expressed that the decree dismissing the plaintiff's bill must be reversed. We will not enter a decree for the plaintiff here, because we are not in a position, from the facts before us, to adjudge all incidental matters touching the custody of the child, or touching alimony during the pendency of the suit, in the payment of which, as we are advised by motion, the plaintiff is in arrears, but will remand the cause for further proceedings.

It is ordered that the decree dismissing the plaintiff's bill be reversed ; that the cause be remanded to the trial court with directions to enter a decree for the plaintiff dissolving the bonds of matrimony between him and the defendant, the plaintiff first paying to the defendant or into court for her use, all arrearages, if any, in the alimony heretofore awarded to her by the trial court. It is further ordered that the trial court make such orders touching the care, control, and custody of the infant child of the parties, and alimony, if any, for its sustenance, as the interests of said infant may demand. Judge Lewis concurs. Judge Thompson dissents.