### RING *v.* RING.

1. A petition for divorce on the ground of habitual intoxication can not be
   amended by adding thereto the ground of cruel treatment, although the facts
   alleged to constitute such treatment are substantially the same as those set
   forth in the original petition.
2. "Intoxication," as used in section 2427 of the Civil Code, which provides for
   the granting of a divorce on the ground of "habitual intoxication," means
   drunkenness produced by alcoholic liquors, and not the condition resulting
   from the excessive use of morphine.

Argued February 4, — Decided February 28, 1901.

Libel for divorce.    Before Judge Felton.    Bibb superior court.
May 3, 1900.

*Marion W. Harris,* for plaintiff in error.
*John P. Ross,* contra.

FISH, J.    George W. Ring brought an action against his wife,
Mamie S. Ring, for a total divorce.    His petition alleged that at
the time of their marriage she "was addicted to the habitual and in-
temperate use of opium in its various forms, which habit rendered
her unfit for the marriage state, in that it made her incapable to prop-
erly discharge her duties as wife and mother and to properly con-
tribute to your petitioner's happiness and comfort;" that he, at the
time of the marriage, did not know that she was addicted to such
habit; that the habitual use of opium in its various forms "was
ruinous to her health and to her and your petitioner's happiness;"
that "her habitual and intemperate use of the same has increased
so that, disregarding her duties as a wife toward your petitioner,
she has been guilty of habitual intoxication for a period of several

years past, thereby bringing your petitioner by her condition and conduct much mortification and utterly banishing conjugal bliss from his home. That by reason of the physical and mental condition of his said wife, and of her conduct because of her habitual use of opium and its derivatives, your petitioner was unable to live with his said wife in peace and happiness." Upon the trial the plaintiff offered the following amendment: "And now comes petitioner and by leave of the court amends his petition, and alleges that the defendant has been guilty of cruel treatment to him in and by the acts and deeds alleged in the 3rd, 4th, 5th, 6th, and 7th paragraphs, by which acts she brought great pain and mortification and humiliation to petitioner and by her said conduct harassed and wounded petitioner in his peace and happiness. That the said habit of defendant became and was known to petitioner's neighbors and friends to his mortification and unhappiness. That she cruelly treated petitioner by failing to keep his home and to minister to his wants as a wife." The acts and deeds alleged in the paragraphs of the petition referred to in the amendment are set forth in the above quotations from the original petition. The defendant objected to the allowance of this amendment, upon the ground that its allegations were insufficient in law to constitute cruel treatment as a ground for divorce, and upon the further ground that the amendment sought to introduce a new cause of action. The objections were overruled and the amendment allowed. The court charged the jury as follows: "I charge you that if the defendant was an habitual user of opium, morphine, or other forms of morphia, and became habitually affected and intoxicated from the use thereof, then, under our statute, the plaintiff is entitled to a divorce from the defendant upon the ground of habitual intoxication. I charge you further that a person may become intoxicated, within the meaning of the Georgia statute, as well by the use of opium and morphine as by the use of whisky. . . It is habitual intoxication under our statute, and if proven satisfactorily to you is a ground for divorce, either partial or total, in your discretion." The jury returned a verdict finding a total divorce for the plaintiff. The defendant's bill of exceptions assigns error upon the allowance of the amendment, over her objection thereto, and upon the above-quoted charge of the court.

1. In our opinion, the court committed error in allowing the

amendment. The original ground upon which the plaintiff sought a divorce was habitual intoxication upon the part of the defendant, caused by her voluntary and excessive use of "opium in its various forms." The amendment sought to add another and distinct ground, that of cruel treatment, which was a new cause of action. The amendment alleged that the defendant had been guilty of cruel treatment to the plaintiff, "in and by the acts and deeds alleged in" certain paragraphs of the petition, and counsel for the defendant in error contends that as the amendment alleged no new facts, it did not seek to add a new cause of action. We do not think the contention sound, as the acts and deeds in the petition to which the amendment refers were not designated in the petition as cruel treatment, but were set forth simply for the purpose of showing the effect of the use of opiates by the defendant. Habitual intoxication and cruel treatment are separate and distinct grounds of divorce under our statute, and where the petition alleges only one of them, we think it evident that the other can not be added thereto by amendment. "No amendment adding a new and distinct cause of action, or new and distinct parties, shall be allowed unless expressly provided for by law." Civil Code, § 5099.

2. Section 2427 of the Civil Code provides: "In case of cruel treatment or habitual intoxication by either party, the jury, in their discretion, may grant either a total or partial divorce." Is the term, "intoxication," as here used, limited in its meaning to drunkenness produced by the excessive use of alcoholic liquors, or does it extend to like mental and physical conditions resulting from the use of opiates or other narcotic drugs? Giving to the word its plain and ordinary meaning, we think it is restricted to drunkenness produced by the excessive use of alcoholic liquors, or, in other words, that the statute uses it as being synonymous with drunkenness. Webster's International Dictionary defines "intoxication" as being "the state of being intoxicated or drunk; inebriation; ebriety; drunkenness; the act of intoxicating or making drunk;" and gives as its synonyms "drunkenness; inebriation; inebriety; ebriety; infatuation; delirium." It gives the meaning of the word in medicine as being, "a poisoning, as by a spirituous or narcotic substance." The Century Dictionary defines "intoxication" as follows: "1. Poisoning. 2. The art of inebriating, or the state of being inebriated; drunkenness; the state produced by drinking

too much of an alcoholic liquid, or by the use of opium, hashish, or the like." The Standard and Encyclopædic dictionaries define the word, "intoxication," in almost the exact language used in Webster's International Dictionary. In Bouvier's Law Dictionary, under the head, "Intoxication," a reference is simply made to "Drunkenness," which is defined as follows: "In Medical Jurisprudence. The condition of a man whose mind is affected by the immediate use of intoxicating drinks." Black's Law Dictionary says: "'Intoxicate.' Generally relates to the use of strong drink." Abbott's Law Dictionary gives a similar definition. Anderson's Law Dictionary says "intoxicate" means "to become inebriated or drunk," and that "intoxicated" means "drunk, from use of spirituous liquor." It appears, therefore, that lexicographers treat intoxication and drunkenness as synonymous. In State *v.* Kelly, 47 Vt. 294, the charge against the accused was that he "became and was found intoxicated." The court held the charge sufficient, without alleging upon what he became intoxicated. Barrett, J., speaking for the court, said: "It is familiar to the profession, that the language used in statutes, *penal* as well as others, is to have its ordinary meaning, unless it appears to have been used, or that it might have been used, in a different meaning. It needs no discussion or illustration to show that when it is said that a man is intoxicated, the meaning is, that his condition has been produced by the drinking of intoxicating spirituous liquor. No additional word or expression is used or needed to convey the full and unambiguous idea. Whenever any other idea is intended to be conveyed by the term *intoxicated*, or its equivalent, *drunk*, other words are always used, and are necessary to be used. It is sometimes said that a person is intoxicated or drunk with opium, or with ether, or with laughing-gas. But it is always felt and understood that such is an unusual and forced use of the words *intoxicated*, *drunk*, and the addition to them is needful in order to prevent misapprehension of the sense in which those words are thus used."

In Commonwealth *v.* Whitney, 11 Cush. 477, it was held that evidence of habitual intoxication from the use of chloroform will not sustain a complaint charging a person with being "a common drunkard." In that case Merrick, J., said: "There can be no doubt that drunkenness, as it is commonly understood in the community, is the result of the excessive drinking of intoxicating liquors. Such

is also the signification given to it by lexicographers. It is ebriety, inebriation, intoxication; all words nearly synonymous, and all expressive of that state or condition which inevitably follows from taking into the body, by swallowing or drinking, excessive quantities of such liquors." When that decision was rendered, among other grounds of divorce in Massachusetts was "gross and confirmed habits of intoxication." Subsequently, in 1889, an act was passed in that State providing that a divorce might be decreed "for gross and confirmed drunkenness caused by the voluntary and excessive use of opium or other drugs." This act was presumably passed to supplement the then existing grounds for divorce, in view of the decision in Commonwealth *v.* Whitney, supra. See Burt *v.* Burt, 168 Mass. 204, 46 N. E. Rep. 622. It has been held that the term "habitual intemperance," in the divorce law of Connecticut, does not apply to the effect caused by the excessive and habitual use of opiates (Barber *v.* Barber, 14 Law Rep. 375); and similar rulings have been made in reference to the term "habitual drunkenness," in the divorce laws of Missouri (Dawson *v.* Dawson, 23 Mo. App. 169), and Illinois (Youngs *v.* Youngs, 130 Ill. 230). 39 L. R. A. 264. In 9 Am. & Eng. Enc. L. (2d ed.) 813, it is said that "habitual drunkenness" and the terms, "habitual intemperance," "habitual intoxication," and "continued habits of intoxication," are equivalent and capable of the same definition, and the definition given is, "the fixed and irresistible habit of getting drunk. . . It is the habit of using intoxicating liquors to excess, and does not include the excessive use of opiates and drugs." In support of the text, in addition to the cases we have cited above, are cited Holland *v.* Holland, 4 Leg. Gaz. (Pa.) 372; Bean *v.* Bean, 11 Lanc. Bar (Pa.), 138; Harris's Appeal, 2 W. N. C. (Pa.) 331; to which cases we have not access. Again, in 17 Am. & Eng. Enc. L. (2d ed.) 399, it is said: "The term 'intoxicated' usually signifies a condition produced by drinking intoxicating spirituous liquors, and is equivalent to 'drunk.'"

Our statute allowing a divorce for habitual intoxication was enacted in 1850, when the opium habit was comparatively rare in this State, but intoxication from alcoholic liquors was common and generally designated as drunkenness; and we feel sure that the legislature used the word "intoxication" in its plain, ordinary, and usual sense, viz., alcoholic drunkenness. While this statute has

been twice re-enacted in the adoption of codes by the legislature, yet the same language has been retained, and there is nothing to indicate an intention to give the word "intoxication" a broader or more comprehensive meaning than it had when originally employed in the statute. Even if we admit the contention of counsel that the evil effects of the habitual and excessive use of opiates is greater and renders the married state more intolerable than habitual intoxication from the use of alcoholic liquors, the question under consideration would not be affected at all. The point involved is the meaning of the term "intoxication" as employed in the statute; and we have no difficulty in reaching the conclusion that it was never meant to include the condition produced by the habitual and excessive use of opiates, or other narcotic drugs.

*Judgment reversed. All the Justices concurring, except Simmons, C. J., and Cobb, J., absent.*