*595 OPINION OF THE COURT
Roy S. Mahon, J.
The defendant is charged with an act of driving while impaired by drugs in violation of section 1192 (4) of the New York State Vehicle and Traffic Law. Specifically, the information filed herein alleges that on March 31, 1993, at about 10:20 p.m., northbound on Glen Cove Road in Glen Head, County of Nassau, State of New York, the defendant operated a motor vehicle while his ability to operate said vehicle was impaired by the use of a drug, as defined by the Vehicle and Traffic Law. This case first appeared on the court’s calendar on April 1, 1993 and was successively adjourned until February 1, 1994. At that time, after having waived his right to a trial by jury, this court commenced a nonjury trial of the charge pending against the defendant. On February 15, 1994, the nonjury trial of the defendant by this court was concluded. After carefully considering the testimony and evidence adduced at trial, the court now makes the following findings of fact and conclusions of law.
The People’s direct case was comprised, in large measure, of testimony from Police Officer James Read, Police Officer Philip Fox, and Police Officer Joseph Lynch. Police Officer Read testified, in substance, that on the evening of March 31, 1993, while operating on routine motor patrol, he observed the defendant’s vehicle traveling northbound on Glen Cove Road in Glen Head, New York. The defendant’s vehicle was weaving on the roadway and, at one point, left the paved roadway onto a nearby median. After stopping the defendant’s vehicle, Officer Read asked the defendant to produce his license, registration and insurance card. As the defendant exited the car, he staggered and swayed and exhibited bloodshot and glassy eyes. He also exhibited slurred speech and some difficulty in producing the documents requested by the officer. Officer Read also detected the slight odor of an alcoholic beverage on the defendant’s breath. During the course of Officer Read’s discussion with the defendant, the defendant indicated that he had recently returned from a long trip and taken medication. The defendant did not specify the medication which he had taken nor did he indicate when it was ingested. He also admitted to consuming a glass of wine sometime earlier in the evening. Officer Read then administered a series of field sobriety tests to the defendant. Following these field sobriety tests, the defendant was handcuffed *596 and transported to the Nassau County Police Department’s headquarters for further testing.
Police Officer Fox assisted in the defendant’s arrest. He, too, observed the defendant’s glassy eyes and unsteady stance. At the Central Testing Unit at the Nassau County Police Department’s headquarters, he spoke with defendant. He detected the smell of alcohol on the defendant’s breath. He also invoiced the defendant’s property consisting of units of foreign currency. He indicated that the defendant had no difficulty identifying the value of the units of foreign currency or making telephone calls to third parties not present. The defendant was then administered a breath examination with the assistance of a device known as the Intoxilyzer 5000. Utilizing infrared technology, this device can detect the presence of alcohol on a person’s breath and convert it to a reading of the alcohol in their bloodstream. The Intoxilyzer 5000 test failed to reveal the presence of alcohol in the defendant’s bloodstream and returned a reading of ".00.” Officer Lynch, who had administered the Intoxilyzer 5000 test, then asked the defendant to provide a sample of his urine and to undergo a second series of field sobriety tests. During his discussion with the defendant, he noticed that the defendant had some difficulty speaking. He said the defendant also indicated that he had returned recently from a long trip and had taken a medication known as ciprin. Officer Lynch testified that the defendant appeared to have difficulty understanding the instructions for the field sobriety tests and poorly performed the tests, in his opinion. Officer Lynch then recommended that the defendant seek medical assistance from a physician. A subsequent laboratory analysis of the defendant’s urine revealed the presence of benzodiazepin.
The defendant testified on his own behalf. He indicated that he is employed as an economist and had recently returned from a location near the coast of South Africa on a 10-day business trip. His departing and return flight each took approximately 20 hours to complete and subjected him twice to a 9-hour difference in time zones. He further indicated that he had been in the United States for approximately three to four days after his return trip when he was arrested for the instant offense. He also testified that he is a user of a drug identified as dalmane, a prescription medication used to induce sleep, also known as flurazepam
At trial, the defendant stated that on the evening of March 31, 1993, he had eaten dinner at a restaurant located in the *597 Borough of Manhattan in New York City. With dinner he had consumed a glass of wine. After dinner he left New York City in his daughter’s automobile with which he was somewhat unfamiliar. Suffering from fatigue from his recent trip abroad, and stress related to the general nature of his employment, the defendant indicated that he engaged in the conduct which drew Officer Read’s attention to his vehicle. He also indicated that his unfamiliarity in the operation of this daughter’s car was a contributing factor to his erratic operation of the vehicle. It is vital to note that the defendant testified that the last time he had taken the prescription medication, dalmane, was approximately 48 hours before his arrest. The defendant’s testimony, in substance, corroborated the People’s testimony regarding the inventorying of his property, his telephone call to his attorney, the administration of the Intoxilyzer test, the ".00” reading, the administration of the field sobriety tests, and his donation of a urine sample. He also stated that he has been a long-time user of dalmane and, after ingesting dalmane, experiences bloodshot eyes. He testified that from his experience, he encountered no residual effects of the drug two to three days after taking it which would influence his ability to work and that he takes the drug to induce sleep. According to the defendant, he, at no time, voluntarily increased the prescribed dosage of the drug nor was he aware of any prohibition regarding the consumption of alcohol after a significant interval of time had passed from ingesting the drug.
The attorney who represented the defendant at the time of his arrest also testified. He stated, in substance, that in his opinion, the defendant did not appear to be intoxicated or impaired by drugs at the time of his arrival at the Nassau County Police Department’s headquarters to meet with his client.
The defense produced a third witness. This witness was qualified as an expert in the field of pharmacology and toxicology. The witness testified that he has had long and significant professional experience with the clinical aspect of drugs. Moreover, the witness was particularly familiar with the effects of the drug known as dalmane. The expert witness testified that dalmane is one of a family of drugs employed to induce sleep. After ingestion, the clinical effect of the drug lasts only for 8 to 10 hours. During that 8- to 10-hour period, a person ingesting dalmane can expect to experience the sleep-inducing qualities of the drug. Thereafter, the person could expect to awaken and function normally. Additionally, after *598 dalmane is ingested, the human body metabolizes the drug, at least in part, into a substance known as benzodiazepin. The metabolite, benzodiazepin, may remain detectable in the human bloodstream up to 14 days after ingestion. The only medical test which can establish the quantity of flurazepam in the human body is a blood test. A urine test, such as the one administered to the defendant, can only establish the presence of flurazepam in the human body, but not the quantity. The expert witness, who testified he was being financially compensated by the defendant for his professional services, also testified that he performed a physical examination of the defendant, reviewed the records of the administration of the field sobriety tests given to the defendant, reviewed the results of the urinalysis given to the defendant and examined his signature upon a police form. The witness testified that the degree of fine motor control exhibited by the defendant was inconsistent with the clinical effects of dalmane. He further testified that some of the behavior exhibited by the defendant at the time of his arrest was consistent with fatigue.
In rebuttal, the People offered into evidence a letter from the defendant’s physician indicating the length of time the defendant has been taking dalmane and the warning associated with the use of the drug. No testimony or evidence was offered to discredit the expert testimony offered by the defense.
In order for the People to prove the defendant guilty beyond a reasonable doubt they must prove the following elements of the crime:
(1) The defendant ingested a drug.
(2) The drug ingested by the defendant is one proscribed by Public Health Law § 3306. (See, Vehicle and Traffic Law § 114-a.)
(3) After ingesting the drug, the defendant operated a motor vehicle. (See, Vehicle and Traffic Law § 125.)
(4) While operating his motor vehicle the defendant’s ability to operate the motor vehicle was impaired by the ingestion of the drug.
Applying this test to the facts of the instant case, we find that the defendant, by his own testimony, ingested the drug flurazepam, which was metabolized in his body as the substance benzodiazepin. It is uncontroverted that the drug flurazepam is a controlled substance pursuant to Public Health Law § 3306. It is also uncontroverted that on the evening of *599 March 31, 1993, the defendant was operating a motor vehicle, specifically a 1988 Honda automobile, within the meaning and definition of the Vehicle and Traffic Law. However, essential to a successful prosecution of this offense is proof beyond a reasonable doubt that the defendant suffered impairment to any extent of his physical or mental abilities which he was expected to possess as a reasonable and prudent driver. (See, People v Rossi, 163 AD2d 660 [3d Dept 1990], lv denied 76 NY2d 943.) On that point, the People have failed to carry their burden.
The expert witness produced by the defense testified that the clinical effect of the drug lasts only 8 to 10 hours after ingestion. Thereafter, a person who would awaken from sleep induced by the drug would be able to resume normal activity such as driving, operating office machinery, or engaging in occupational activities. In the absence of a blood test given to the defendant near the time of his arrest, the quantity of the drug flurazepam in the defendant’s body while operating his motor vehicle is unknown. In view of the expert testimony advanced by the defense regarding the limited clinical effect of the drug, it cannot be said that the mere presence of the metabolite, benzodiazepin, in the defendant’s body at the time of his arrest, coupled with the observations of the defendant’s behavior on the evening of March 31, 1993 establishes beyond a reasonable doubt the defendant’s impaired ability to drive on the night in question. To find criminal culpability upon the stricter standard of mere presence of a proscribed drug in the defendant’s body, coupled with observations of the defendant’s behavior, would, on these facts, fly in the face of generally accepted scientific fact within our medical community and, in our view, impermissibly strain the meaning of the statute.
Accordingly, after trial, the court finds that the People have failed to prove the defendant guilty of driving while ability impaired by drugs in violation of section 1192 (4) of the Vehicle and Traffic Law. The information pending against the defendant is hereby dismissed. The defendant is discharged from the jurisdiction of the court.