OPINION OF THE COURT
Margarita Lopez Torres, J.
The complaint in this case charges defendant Yevgeny Grin- *671 berg with operating a motor vehicle while under the influence of alcohol (Vehicle and Traffic Law § 1192 [1], [3]). At the conclusion of the People’s case and after the People rested in this bench trial, defendant moved, pursuant to CPL 290.10, for a trial order of dismissal of all the charges in this matter, arguing that there was insufficient evidence on the record to make a prima facie case as to any of the charges and, in particular, that the People had failed to prove that defendant was operating a vehicle while under the influence of alcohol as required by Vehicle and Traffic Law § 1192 (1) and (3). The court reserved decision and allowed both sides to submit memoranda in support of their respective positions. At that point, the defendant rested without presenting any evidence. For the reasons that follow, defendant’s motion is granted.
The Testimony at Trial
Police Officer Michael Romann testified at trial that, on January 16, 2004, he observed the defendant in the driver’s seat of a vehicle that had crashed into a parked car. The car’s engine was running and the gear was in “drive.” Officer Romann observed that the defendant was unconscious and tried to wake him for 10 minutes. When the defendant awoke, Officer Romann observed that his eyes were bloodshot and his pupils were dilated. The officer also saw vomit on the driver’s seat. When the defendant got out of the car, the officer observed that he was “extremely” unsteady on his feet. The defendant was transported to the precinct and, once there, he refused to take a urine test and denied having consumed any drugs or alcohol.
The officer testified that he concluded that the defendant was intoxicated by drugs. He testified that he did not smell alcohol on defendant’s breath and that he informed the defendant that he was being arrested for driving while under the influence of drugs. He testified also that he told the defendant that he believed that the defendant had narcotics in his system. The officer admitted that he asked the defendant to take a urine test, as opposed to a breath test, because he believed that the defendant was under the influence of drugs, not alcohol. In addition, the officer admitted during cross-examination that all of the paper work that he completed in connection with this arrest reflects that his opinion was that defendant was under the influence of drugs. In the officer’s report of refusal to submit to a chemical test, the only box checked is the one corresponding to operating while ability impaired by the use of a drug. In redirect, Officer Romann testified, however, that he could not “rule out” that defendant was under the influence of alcohol.
*672 The Parties’ Arguments
Defendant argues that there was no evidence presented at trial to prove that he was under the influence of alcohol. Since he is only charged with Vehicle and Traffic Law § 1192 (1) (driving while ability impaired by the consumption of alcohol) and § 1192 (3) (driving while intoxicated), defendant argues that the People have failed to prove an element of those charges. In particular, defendant argues that, even though the Vehicle and Traffic Law does not define the term “intoxicated” or “intoxication,” it is clear from the statutory scheme, and from at least three appellate decisions in this state, that in the context of Vehicle and Traffic Law § 1192 (3) the term “intoxicated” is limited to impairment caused by the consumption of alcohol and does not include the consumption of any other substance.
Relying on People v Koch (250 App Div 623 [2d Dept 1937]), the People argue that “intoxication” in the context of New York’s Vehicle and Traffic Law can result from taking “intoxicanting agents” other than alcohol. The People also argue that the ordinary meaning of the word “intoxication” is not limited to the state caused by alcohol consumption. In further support of their position, the People cite the Legislature’s decision to specifically include “alcohol” in the language of the “impairment” provision (Vehicle and Traffic Law § 1192 [1]), and to leave “alcohol” out of the “intoxication” provision (Vehicle and Traffic Law § 1192 [3]), which, the People argue, is evidence that the Legislature intended for this latter subdivision to apply to intoxication by alcohol or drugs. Finally, the People argue that, because the government is not allowed to compel a driver to submit to a chemical test to determine the presence of drugs or alcohol unless there has been a collision in which serious injury or death was caused to a third person, the Legislature could not have intended that drivers who appear to be impaired by the consumption of drugs could escape prosecution by refusing to take a drug test.[1]
*673 Discussion
Under CPL 290.10, a court is authorized to enter a trial order of dismissal of any count if, at the conclusion of the People’s case, the trial evidence is not legally sufficient to establish the offense charged. Legally sufficient evidence means “competent evidence which . . . establishes] every element of an offense charged and the defendant’s commission thereof.” (CPL 70.10 [1].)
The court finds that there was not legally sufficient evidence presented at trial to conclude that defendant was driving while under the influence of alcohol. Officer Romann’s testimony did not establish this element beyond a reasonable doubt. While the People established that defendant’s ability to operate a motor vehicle was impaired, the evidence did not establish that such impairment was caused by the consumption of alcohol. Therefore, defendant could only be found guilty if Vehicle and Traffic Law § 1192 (3) proscribes operating a motor vehicle while under the influence of drugs, even if such drugs are unidentified. This case turns then on the meaning of the term “intoxicated” as used in that section of the Vehicle and Traffic Law.
As a general rule, “[t]he primary consideration of courts in interpreting a statute is to ascertain and give effect to the intention of the Legislature.” (Riley v County of Broome, 95 NY2d 455, 463 [2000] [internal quotation marks omitted].) The legislative history of the Vehicle and Traffic Law has proved useful in ascertaining the legislative intent behind the provision in question.
The Legislative Intent of the Early Statutes
The first statute prohibiting driving while intoxicated was passed by the New York Legislature in 1910. (See, L 1910, ch 374.) This law added a new subdivision (3) of section 290 of the Highway Law to provide in relevant part: “Whoever operates a motor vehicle while in an intoxicated condition shall be guilty of a misdemeanor.” This section was amended several times and, in 1929, it became part of the Vehicle and Traffic Law. (See, Ve *674 hide and. Traffic Law of 1929 § 70 [5], added by L 1929, ch 54.) The language of the statute, however, remained intact throughout the amendments up to and including 1933. None of these statutory enactments defined the word “intoxicated.”
A statute is to be interpreted in the light of its history and apparent purpose, and “must be read in the light of conditions existing at the time of its passage and construed as the courts would have construed it soon after its passage.” (People v Koch, 250 App Div 623, 624 [2d Dept 1937]; see also, People v Stephens, 71 NY 527, 537 [1878].) Thus, it is fair to ask, what did “intoxication” mean in the early part of the 20th century? What did the Legislature intend to outlaw with these initial enactments?
In 1919, the Appellate Division, Third Department, was faced with these questions. In People v Weaver (188 App Div 395 [3d Dept 1919]), the Court resorted to the Century Dictionary for the meaning of the word “intoxication.” It found the term to be defined as: “The state produced by drinking too much of an alcoholic liquor.” (Id. at 399.) Other definitions, according to the Court, referred to “any mental exhilaration : . . produced by alcohol.” (Id.) The Court then proceeded to give the word “intoxication” “a reasonable interpretation having reference to the purpose of the statute in which it is used,” and concluded that under Highway Law § 290 (3), “the meaning of the term clearly is that one shall not be affected by alcoholic beverage to such an extent as to impair his judgment or his ability to operate an automobile.” (Id. at 400.)
In 1901, the Supreme Court of Georgia, in Ring v Ring (112 Ga 854, 38 SE 330 [1901]), engaged in an extensive analysis of the meaning of the word “intoxication” and, in particular, whether its meaning included the state produced by the consumption of opium. After analyzing the term’s definition in nine different dictionaries, law dictionaries and encyclopedias, the court concluded that “lexicographers treat ‘intoxication’ and ‘drunkenness’ as synonymous.” (Id., 112 Ga at 857, 38 SE at 331.) The Ring court also cited the findings of cases from several states that agreed with its conclusion, and held that the legislature used the word intoxication “in its plain, ordinary, and usual sense, viz. alcoholic drunkenness.” (Id., 112 Ga at 858, 38 SE at 332.)
It follows that considering the 1910 statute “in the light of conditions existing at the time of its passage,” the law meant to prohibit only intoxication by alcohol consumption.
*675 More Recent Revisions of the Vehicle and Traffic Law and Their Legislative Intent
The first major revision of the Vehicle and Traffic Law occurred in 1941 when the Legislature amended subdivision (5) of section 70 to permit courts to admit evidence of the amount of alcohol in a driver’s blood to prove intoxication. (See, L 1941, ch 726.) That section also established that a blood alcohol content of 0.15% or more was “prima facie” evidence that defendant was in an intoxicated condition.
The next change in the Vehicle and Traffic Law occurred in 1960. (See, L 1960, ch 184, § 1.) That year, the Legislature added a subdivision (1) to section 1192,[2] prohibiting, for the first time, the operation of a vehicle while a driver’s ability is impaired by alcohol and made it a traffic infraction. (See, L 1960, ch 184, § 1.) This law also created a presumption that a driver’s ability is impaired if the driver’s blood alcohol level is 0.10% or more. The language prohibiting driving while intoxicated was kept intact and became subdivision (2) of the same section (today, subdivision [3]). The Governor’s memorandum in connection with this bill states that the amendment “provides a realistic approach” for dealing with the “drinking driver,” and it explains that “[e]xisting law has proved inadequate” because “it is directed towards only the most serious offender, the driver with a blood-alcohol level of at least 0.15%.” (Governor’s Mem approving L 1960, ch 184, 1960 NY Legis Ann, at 473.) The memorandum concludes that “[t]he existing provisions of law remain to cope with the more serious offenders.” (Id.) Up to 1960, then, the Legislature was focused on punishing “drinking drivers,” and the provision dealing with “intoxicated” drivers was saved for the most serious of those “drinking drivers.”
Later, in 1966, a provision prohibiting operating a motor vehicle while a driver’s ability was.impaired by the use of a drug was added to Vehicle and Traffic Law § 1192. (See, L 1966, ch 963, § 1.) The Senate Introductory Record for this law indicates that the bill sought “to extend provisions applying to operating of motor vehicle or motorcycle while in intoxicated condition, to include operating while ability is impaired by use of drug” and to define such drugs. (See, 1966 NY Legis Record & Index, Senate Introductory Record No. 1215, at 114.) The Bill Jacket for *676 this law also includes a letter from the sponsor of the bill, Senator Norman Lent, to the Counsel to the Governor urging favorable consideration of the bill. In that letter, the Senator explained that “as presently written” Vehicle and Traffic Law § 1192 (2) (the driving while intoxicated provision) “pertains to the operation of a motor vehicle while under the influence of alcohol,” and added that the bill would impose “equal sanctions” on persons convicted of driving while under the influence of a drug. (See, letter of Senator Norman F. Lent, June 7, 1966, Bill Jacket, L 1966, ch 963.) The Senator wrote that “New York is one of the few remaining major states without a law against operating a motor vehicle while one’s ability is impaired by the use of drugs [or] narcotics.” Finally, the Senator added that passage of the bill was needed to curb the “present practice employed by defendants in drunk driving prosecutions of claiming they were not drunk, but ‘merely’ under the influence of a drug or narcotic prescribed by their physician.” Thus, the legislative history of this bill conclusively indicates that the Legislature did not believe that impairment caused by the consumption of drugs was prohibited by the Vehicle and Traffic Law up to this point.
In 1970, Vehicle and Traffic Law § 1192 was amended once again to add a provision making it a per se violation of the statute to operate a motor vehicle with a blood alcohol content of 0.15% or more. This provision became subdivision (2) of the section, while the “impaired ability” provision continued to be subdivision (1), the “driving while intoxicated” provision became subdivision (3), and the “drug impairment” provision that had been added in 1966 became subdivision (4). Except for changes in the blood alcohol levels, the statute remains substantially unchanged to the present. In other words, the “driving while intoxicated” provision contains essentially the same language as the provision passed by the Legislature in 1910.
The legislative history of the Vehicle and Traffic Law then supports the finding that the only provision that deals with impairment caused by the consumption of drugs, or agents other than alcohol, is Vehicle and Traffic Law § 1192 (4) and that the Legislature never intended for section 1192 (3) to apply to intoxication by drugs.
The Case Law
The court was unable to find any published opinion dealing with the particular issue of whether a defendant may be *677 convicted under Vehicle and Traffic Law § 1192 (3) when the evidence shows that he or she was not under the influence of alcohol but of another unidentified substance. However, the cases discussing the meaning of “intoxication” in the context of the Vehicle and Traffic Law support this court’s finding that section 1192 (3) is limited to alcohol intoxication.
Defendant relies on People v Bayer (132 AD2d 920 [4th Dept 1987]). In Bayer (at 920), the Court held that the inclusion of the phrase “while under the influence of alcohol or drugs” in the factual part of the accusatory instrument did not render an indictment charging defendant with violating Vehicle and Traffic Law § 1192 (3) unconstitutionally vague or defective. In so doing, the Court explained that Vehicle and Traffic Law § 1192 is entitled “Operating a motor vehicle while under the influence of alcohol or drugs,” and “contains three subdivisions relating to alcohol (subds [1], [2], [3]) and one relating to drugs (subd [4]).” (Id. at 920.) The Court further stated that even though subdivision (3) does not specify the substance that creates the intoxication, “[i]t is clear as a matter of law, however, that the subdivision is intended to apply only to intoxication caused by alcohol.” (Id.) The Court explained that this conclusion was buttressed by an examination of former section 1196 (1) of the Vehicle and Traffic Law (now Vehicle and Traffic Law § 1192 [9]) which permits conviction of a violation of subdivision (1), (2) or (3) of section 1192, notwithstanding that the defendant is only charged with violating subdivision (2) or (3), but does not permit conviction of a violation of subdivision (4) under those circumstances. (Id.) The Court finally added that “[defendant may not be convicted under [Vehicle and Traffic Law § 1192 (3)] unless the People prove that defendant was in an intoxicated condition resulting from the influence of alcohol.” (Id. at 921.)
Other cases cited by defendant support the conclusion that Vehicle and Traffic Law § 1192 (3) applies exclusively to the consumption of alcohol. In People v Farmer (36 NY2d 386 [1975]), the Court of Appeals held that a simplified traffic information that charged a violation of subdivision (3) of Vehicle and Traffic Law § 1192 gave sufficient notice to a defendant that he could be convicted under subdivisions (1) and (2) of the same statute. In so doing, the Court found that “subdivisions 1, 2 and 3 of section 1192 proscribe separable offenses based upon the degree of impairment caused by alcohol ingestion.” (Id. at 390 [emphasis added].) The Court added that the three subdivisions “closely overlap and are but species of the generic offense of *678 ‘Operating a motor vehicle while under the influence of alcohol’ ” {id.).
Similarly, in People v Cruz (48 NY2d 419, 427 [1979]), the Court of Appeals, in holding that the provisions of Vehicle and Traffic Law § 1192 (1) and (3) were not unconstitutionally vague, stated that the standard for determining intoxication under subdivision (3) is “whether the individual's consumption of alcohol has rendered him incapable of employing the physical and mental abilities needed to” perform certain tasks. (Additional emphasis added.)
The two cases in which the People rely either do not engage in a review of the legislative history of the Vehicle and Traffic Law, or, to the extent that they do, ignore the import of such history. First, the People argue the decision in People v Koch (supra) is controlling. The issue before the Court in Koch was whether a conviction under Vehicle and Traffic Law § 70 (5) (the former “driving while intoxicated” provision) could be sustained when the evidence established that defendant was driving under the influence of an inadvertent overdose of a drug prescribed by his physician to relieve pain. The Court held that, under those circumstances, the conviction would be reversed because the “statute contemplates only voluntary intoxication resulting from imbibing alcoholic liquors or the voluntary taking into the system of other intoxicating agents; and not the condition from which the appellant was suffering, induced by the drug.” {Id. at 624.)
This holding in Koch is questionable for several reasons. First, the Court stressed that its ruling was confined to the facts presented there (i.e., whether the intoxication under the statute must be voluntary) but then went on to find that “[t]he term ‘intoxication’ includes also the condition produced by excessive use of agencies other than alcoholic liquor, when they are taken voluntarily.” {Id. at 625.) This language appears to be dicta since the Court did not need to address the issue of whether intoxication by a substance other than alcohol was covered by the statute after it concluded that the Legislature only intended to proscribe voluntary intoxication. Second, one of the decisions that Koch offers in support of its holding (Ring v Ring, supra) comes to the opposite conclusion, as discussed above. Finally, the Court in Koch acknowledged and took judicial notice that the intent of the Legislature when it enacted this law was “to relieve persons on the highway of the menace of automobile drivers intoxicated by alcoholic beverages.” (Koch, supra at *679 624.) Yet, the Court disregarded this finding and extended the meaning of the word intoxication to the state produced by “other intoxicant agents.”
The People’s reliance on Otero v Town of Southampton (194 F Supp 2d 167 [ED NY 2002]) is similarly unavailing. Otero is a federal civil rights case in which the plaintiff sought damages for false arrest. The Federal District Court had to decide, in the context of a summary judgment motion, whether there was probable cause to arrest the plaintiff for driving while intoxicated in the underlying prosecution under Vehicle and Traffic Law § 1192 (3). Based on the police officers’ observation of common-law signs of intoxication (erratic driving, slurred speech, unsteadiness), together with plaintiffs acknowledgment that he had taken Robitussin, which the officers thought contained alcohol, the court held that the officers had probable cause to arrest plaintiff. The court (at 179) engaged in a discussion of whether Vehicle and Traffic Law § 1192 (3) pertains only to alcohol and stated that it “hesitate[d]” to make that conclusion based on the statute’s failure to include alcohol in its language, and on the definition of the word “intoxication” included in the 1989 edition of the Oxford English Dictionary. As stated above, the court in Otero did not have the advantage of an analysis of the legislative history of the Vehicle and Traffic Law.
The Pattern Jury Instruction for Vehicle and Traffic Law § 1192 (3)
The language of the pattern jury instructions for Vehicle and Traffic Law § 1192 (3) provides additional support for the conclusion that that section of the statute is limited to intoxication by alcohol. The standard charge approved by the Office of Court Administration’s Committee on Criminal Jury Instructions[3] states that a person is in an “intoxicated” condition in the context of the statute “when such person has consumed alcohol to the extent that he or she is incapable, to a substantial extent, of employing the physical and mental abilities which he or she is expected to possess in order to operate a vehicle as a reasonable and prudent driver.” (CJI2d[NY] Vehicle and Traffic Law § 1192 [3].) This definition of “intoxication,” *680 taken from People v Cruz (supra) is the only one found in the standard charge, and nowhere does the charge mention that impairment by drugs is included within the ambit of the statute. This particular charge was revised and amended in 2002 and the CJI Committee did not find it necessary to amend the definition of “intoxicated condition” to include the consumption of drugs.
Finally, it should be noted that the People’s own accusatory instrument describes the Vehicle and Traffic Law § 1192 (3) charge against defendant as “Operating a Motor Vehicle While Under the Influence of Alcohol.” This is evidence that the People are, or at least were, at the time of the filing of the charges against defendant, under the belief that this provision applies exclusively to alcohol intoxication.
In light of the above-discussed legislative pronouncements in connection with the enactment and subsequent amendments of the Vehicle and Traffic Law, this court concludes that subdivision (3) of Vehicle and Traffic Law § 1192 does not cover intoxication caused by a substance other than alcohol. This conclusion is buttressed by the case law, also discussed above, which similarly concludes that subdivision (3) refers exclusively to alcohol intoxication, and, by the language of the pattern jury instruction for this subdivision, clearly limiting “intoxication” to the state caused by alcohol consumption. Because the People have failed to prove that defendant was under the influence of alcohol, an element of both counts in their accusatory instrument, the court must grant the defendant’s motion for a trial order of dismissal on all of the counts.
Conclusion
The court finds that there was not legally sufficient evidence presented at trial to conclude that defendant was operating his vehicle under the influence of alcohol as charged in the People’s accusatory instrument. In addition, the court finds that the defendant may not be convicted of driving while intoxicated under Vehicle and Traffic Law § 1192 (3) because that section does not apply to impairment caused solely by drugs or other unidentified substances. Defendant’s motion for a trial order of dismissal with respect to all counts is granted.

. Prosecution for driving while under the influence of alcohol is allowed even in the absence of a chemical analysis of the defendant’s blood alcohol level. (See, People v Cruz, 48 NY2d 419, 424-425 [1979].) However, such chemical analysis is necessary for a prosecution under Vehicle and Traffic Law § 1192 (4) for driving while ability is impaired by drugs. This is because one of the elements of this offense is that the drug or substance alleged to have caused the defendant’s impairment must be listed in section 3306 of the Public Health Law. (People v Kahn, 160 Misc 2d 594, 598 [Nassau Dist Ct 1994].) Absent such chemical analysis, or perhaps defendant’s admission, the prosecu *673 tion could not prove that defendant was impaired by one of the listed drugs. The court is not unmindful of the People’s argument that there appears to be a gap in the legislative scheme, that is, one that allows drivers who appear to be under the influence of drugs and who refuse to take a blood or urine test to escape prosecution. However, this gap must be filled by legislative action and not by judicial fiat. (See, People v Laing, 79 NY2d 166, 170-171 [1992] [“(c)ourts must construe clear and unambiguous statutes as enacted and may not resort to interpretative contrivances to broaden the scope and application of statutes”].)

. In 1959, Vehicle and Traffic Law § 70 (5) became Vehicle and Traffic Law § 1192. (See, L 1959, ch 775.)

. The CJI Committee is composed of judges and lawyers who are charged with providing standard instructions to be used by judges charging juries on the law and to bring the instructions current with all statutory and case law requirements. Their recommended pattern charges are widely used in criminal trials in the state and their recommendations are given much weight in determining the explanation of concepts and terms under the law. (See, e.g., People v Paris, 229 AD2d 926, 928 [4th Dept 1996].)